**UNITED STATES, Appellee**

v.

**Vincent J. GREAVES, Technical Sergeant, U.S. Air Force, Appellant.**

No. 96–0715.
Crim.App. No. 31535.

U.S. Court of Appeals for
the Armed Forces.

Argued Dec. 3, 1996.

Decided June 9, 1997.

---

For Appellant: *Lieutenant Colonel Kim L. Sheffield* (argued); *Colonel Jay L. Cohen, Lieutenant Colonel Joseph L. Heimann* and *Captain Todi S. Carnes* (on brief); *Colonel David W. Madsen* and *Major Ormond R. Fodrea.*

For Appellee: *Lieutenant Colonel William B. Smith* (argued); *Lieutenant Colonel Michael J. Breslin* (on brief); *Colonel Theodore J. Fink* and *Colonel Jeffery T. Infelise.*

*Opinion of the Court*

SULLIVAN, Judge:

In December of 1994, at Travis Air Force Base, California, appellant, a technical sergeant (E–6), was tried by a general court-martial composed of officer and enlisted members. Pursuant to his pleas, he was found guilty of one specification of wrongfully using cocaine, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement for 90 days, and reduction in grade to E–4. On March 12, 1995, the convening authority approved the sentence as adjudged, and on March 26, 1996, the Court of Criminal Appeals affirmed the findings and sentence in an unpublished opinion.

We granted review of the following issue:
WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO ADVISE THE MEMBERS THAT IMPOSITION OF A BAD–CONDUCT DISCHARGE WOULD DE-PRIVE APPELLANT OF ALL RETIREMENT BENEFITS DESPITE THE MEMBERS SPECIFICALLY ASKING WHAT THE EFFECT OF A BCD WAS ON RETIREMENT.

We hold that the military judge erred by failing to correctly answer two relevant and proper questions asked by the members concerning the impact of a bad-conduct discharge on appellant's impending eligibility to retire. *See United States v. Sumrall,* 45 MJ 207 (1996); *United States v. Griffin,* 25 MJ 423 (CMA 1988); *see generally United States v. Rake,* 11 USCMA 159, 160, 28 CMR 383, 384 (1960).

At the time of appellant's trial, he had completed 19 years and 10 months of active duty. During sentencing deliberations, the panel members asked two questions regarding retirement benefits. The record reflects the following:

MJ: Please be seated. The court will come to order. Let the record reflect the parties are present; the members have returned. Just shortly before reconvening, the court members passed two questions out to the Bailiff that they want answered. I have marked those as Appellate Exhibit X. The questions are as follows:

First, *does confinement, plus a BCD, equal loss of retirement benefits?*

Second, *does hard labor without confinement, plus a BCD, equal loss of retirement benefits?*

*Members, those are two questions, quite frankly, I believe are going to be collateral issues that may not be a matter of your concern.* However, I am going to have to discuss this with counsel as to how they want me to answer it or if I can, in fact, answer this question. . . .

(Emphasis added.) The military judge then sent the members home, convened a session under Article 39(a), UCMJ, 10 USC § 839(a), and discussed the issue with counsel, as follows:

MJ: Okay. Counsel, anybody want to give me some input on this? Anybody even had a chance to think about it?

IDC: *Yes. I would say that both questions could be answered very simply by yes.* Apparently, I was sort of surprised at the question. I thought with the amount of experience on the panel, I was a little bit surprised by this [sic] questions. But apparently, it isn't crystal clear to all of them that a bad-conduct discharge means exactly that, a discharge from the service and a loss of all military status. I think that could be simply clarified with an answer of yes to both questions.

MJ: *That is what concerns me. That is almost giving them an instruction against considering a bad-conduct discharge because it might affect retirement benefits, and that is really not an instruction I am comfortable with.*

TC: Your Honor, I think perhaps the best way to handle it would be to instruct them, remind them of a portion, or read the entire bad-conduct-discharge instruction again. It does make clear in there that a bad-conduct discharge would terminate Sergeant Greaves' service. Then if the members interpret that as intuitively as Mr. Bernstein did, obviously then that would deprive him because he has not yet accumulated 20 years and unless he is eligible for some early retirement benefits, he would not be eligible. I do not think it is appropriate to simply, as Mr. Bernstein suggested, to say yes to the questions. I would prefer you reread the bad-conduct [discharge] instruction in the hope that would clarify. It does say a bad-conduct discharge would terminate the accused's current term of service. Perhaps clarify for the members that it is a discharge; that he would no longer be a member of the Air Force if one is adjudged.

IDC: I don't think that will alleviate their confusion.

TC: That may be true, Your Honor, but I think that anything further than that, while it would alleviate confusion and clarify the issue for the members, is inappropriate. There are many questions the members might have about punishment and about, for example, one of the members asked, I believe it was a lieutenant colonel who asked about the possibility of whether there was a pretrial agreement. There are a lot of questions the members may ask, but they should not be answered because that is not what they are supposed to be considering. A bad-conduct dis-charge, if it is appropriate punishment for this accused and this crime, is appropriate. And they should not be considering any-thing further than the fact than what is contained in this instruction and question whether or not they should adjudge that punishment.

IDC: Perhaps the way to resolve this is to briefly reopen closing arguments for one minute for each counsel to further argue on the bad-conduct-discharge issue.

MJ: *I am definitely not inclined to do that. I am not going to give more argu-ment.* Instructing them on the law or answering their questions as to proce-dures, that doesn't concern me. But I am not, at this point, ready to reopen evidence and/or argument as to how they should consider it. Very well, we will reconvene at 0800 hours. I will spend this evening researching it. . . .

(Emphasis added.)

The Article 39(a) session was re-convened the following morning, and the military judge asked if either side had any case law to support their position. Trial counsel cited *United States v. Henderson*, 29 MJ 221 (CMA 1989), and *United States v. Griffin*, 25 MJ 423. He argued that *Henderson* held retirement benefits are collateral and not appropriate for consideration during sentenc-ing. He also argued that *Griffin* "basically leaves to the judge's discretion" whether to instruct regarding the impact of a punitive discharge on retirement benefits.

Individual defense counsel then argued that *Henderson* "is a case where the court didn't overturn the decision because the ac-cused waived the error on the judge's in-structions. We are not waiving this right now. We are asking for the judge to clarify and simply answer the two questions yes." He also argued that, in *Griffin*, defense coun-sel again did not object to the instructions given by the military judge. Individual de-fense counsel concluded by saying:

There is all sorts of language in the instruction [previously given] that could cause someone—one of the members who had this totally wrong information—to believe that he was correct. That is why I think it needs to be clarified. The answer to the two questions is yes. It could be clarified that the amount of confinement, or lack of confinement, or type of confinement has no effect on retirement benefits, but the bad-conduct discharge clearly terminates any eligibility for retirement benefits. The two cases came up in the context of the issue not being properly raised at the time of trial.

The military judge then responded:

As I refresh my memory in Henderson and Griffin, the two differences has [sic] to do with whether or not an accused is retirement eligible under Griffin and whether or not being three years away in *Henderson.* In this case, this accused is two months shy of retirement. *My understanding, unless someone can show me some law that is different, my understanding is you are not vested with the right to retire until after you have reached 20 years and applied for retirement.... Therefore, I am not going to instruct them as to how a BCD will affect retirement benefits.* I will advise them that it is a collateral issue and their duty is to determine whether or not—what an appropriate punishment for the offense would be. They should base their decision on that. While it is a mitigating factor, it certainly as I instructed them in the very beginning, they should consider all mitigating factors. They still have the obligation to determine what an appropriate punishment is for the offense.

(Emphasis added.) Thereafter, defense counsel requested the military judge to at least note to the members that appellant's retirement benefits had not yet vested. Defense counsel also asked the military judge to re-read the punitive-discharge instruction to them and direct their attention to appellant's initial date of entry onto active duty. The military judge agreed, and then he answered the members' questions as follows:

Members of the court, I can't give you a direct answer to that. That would be invading your providence [sic] as members to determine what an appropriate sentence is for these offenses [and] for this accused. I can tell you and refer you to Prosecution Exhibit 2, which is the personal-data sheet. The last entry on there contains the total active military service date of the accused. I will advise you that retirement benefits, normal retirement benefits, vest after you have reached 20 years. At this point, as you will note, the accused at this point does not have vested retirement benefits.

I will reread part of the instructions. It may help you in your decision. It is the duty of each member to vote for a proper sentence for the offense of which the accused has been found guilty. Your determination of the kind and amount of punishment, if any, is a grave responsibility requiring the exercise of wise discretion. Although you must give due consideration to all matters in mitigation and extenuation as well as those in aggravation, you must bear in mind that the accused is to be sentenced only for the offense of which he has been found guilty. You're advised that the ineradicable stigma of a punitive discharge is commonly recognized by our society. A punitive discharge will place limitations o[n] employment opportunities and will deny the accused other advantages which are enjoyed by one whose discharge characterization indicates that he has served honorably. A punitive discharge will affect an accused's future with regard to his legal rights, economic opportunities, and social acceptability.

*This court may adjudge either a dishonorable discharge or a bad-conduct discharge. Such a discharge deprives one of substantially all benefits administered by the Department of Veteran Affairs and the Air Force establishment. However, vested benefits from a prior period of honorable service are not forfeited by receipt of a dishonorable or bad-conduct discharge that would terminate the accused's current term of service.* A dishonorable discharge should be reserved for those who, in the opinion of the court, should be separated

under conditions of dishonor after conviction of serious offenses of a civil or military nature warranting such severe punishment. A bad-conduct discharge is a severe punishment, although less severe than a dishonorable discharge, and may be adjudged for one who, in the discretion of the court, warrants severe punishment for bad conduct, even though such bad conduct may not include the commission of a serious offense of a military or civil nature. Do the members have any other questions or does that give you something to work from anyway? Okay. *I am not trying to be evasive, but all I can tell the members is that there are certain effects that are collateral to your decision and what those effects are, you shouldn't speculate.* Your obligation is to determine, based on this accused's situation and the offenses, what an appropriate sentence for the offense that he has been convicted of would be. Other than that, I really can't give you any more instructions without invading your providence [sic] as the sentencing body in this case.

(Emphasis added.)

Following another hour of deliberations, the members sentenced appellant to a bad-conduct discharge, confinement for 90 days, and reduction to E–4.

The Court of Criminal Appeals concluded that

the military judge properly addressed the members' questions by an instruction which informed them of the direct consequences of a punitive discharge. The judge was within his discretion in ruling that discussion of retirement eligibility when the appellant was not then retirement-eligible was "so collateral as to be confusing, and, thus, inadmissible. Mil. R. Evid. 403[, Manual for Courts–Martial, United States 1984]."

Unpub. op. at 4, 1996 WL 162033, citing *Henderson,* 29 MJ at 222.

———

■ Appellant was not retirement eligible at the time of his court-martial, but he was very close to becoming retirement eligible. *See* 10 USC §§ 8914 and 8925. The members basically requested that the military judge instruct them on how a bad-conduct discharge would impact on appellant's ability to retire and receive retirement benefits. Despite defense objection, the military judge gave instructions to the members which did not directly answer their questions. He then instructed the members that any effects of a bad-conduct discharge on retirement were collateral consequences of a court-martial sentence, which they should not consider when deciding whether a punitive discharge should be awarded in appellant's case. We hold that these instructional rulings constituted prejudicial error. *See generally Rake,* 11 USCMA at 160, 28 CMR at 384 (error for law officer (now military judge) to minimize matters in mitigation of sentence).

■ At the outset, we note that appellant argues that the instructions given by the military judge suggest that a punitive discharge, with or without confinement, would have no adverse impact on any retirement benefits which appellant might later qualify for. However, once a bad-conduct discharge is adjudged and executed, it terminates a servicemember's military status and any concomitant right to receive military retirement benefits. *See Sumrall,* 45 MJ at 208–09, citing *Hooper v. United States,* 164 Ct.Cl. 151, 326 F.2d 982, 988 (1964); *cf. United States v. McElroy,* 40 MJ 368, 372 (1994)(certain veterans' benefits from prior term of service not forfeited by punitive discharge). Accordingly, to the extent the military judge's instructions in this case suggested that retirement benefits might still be qualified for or received despite an executed bad-conduct discharge, they were legally erroneous. *See United States v. Nickoson,* 15 USCMA 340, 35 CMR 312 (1965); *see also Miller v. United States,* 120 F.2d 968, 972 (10th Cir.1941)(court not bound to give instructions on character evidence in absence of request, but if instructing the jury thereon, must give correct instructions).

Of course, the Government argues that the judge's instructions as a whole do not imply that appellant could still receive retirement benefits despite an approved and executed punitive discharge. Admittedly, the military judge in this case did not expressly instruct the members that an adjudged bad-conduct discharge would still permit a servicemember to qualify for retirement benefits or that an executed discharge would still allow him to collect any retirement benefits for which he earlier became eligible. However, we conclude that his instructions on this matter can best be described as inconclusive, his only clear point being that appellant had no retirement benefits to lose at the time of trial. Moreover, we agree that the members had a justified concern in this case as to whether appellant might keep any retirement benefits which he would later qualify for prior to execution of a punitive discharge. If he could, a reasonable member might be less reluctant to award that punishment. In view of these circumstances, we conclude that the members were left largely unguided in a critical sentencing area. *See United States v. Mamaluy*, 10 USCMA 102, 106, 27 CMR 176, 180 (1959).

In *Griffin*, 25 MJ at 424, this Court cautioned military judges "to be particularly careful in those situations where their answers to questions from members are not clear." That caution was not heeded in this case because the military judge felt a direct answer to the members' questions "was almost giving them an instruction against considering a bad-conduct discharge...." However, in *Griffin* and *Sumrall*, this Court did not so construe this type of instruction and generally approved its use in retirement-eligible cases. In this light, we conclude that the military judge's unresponsive instructions were improperly induced by his erroneous view of the law. *See generally United States v. Travers*, 25 MJ 61, 63 (CMA 1987)(abuse of discretion occurs when a military judge exercises his discretion based on incorrect principles of law); *United States v. Cook*, 11 USCMA 579, 581–82, 29 CMR 395, 397–98 (1960).

In addition, it is undisputed that the military judge did instruct the members that the effects of a bad-conduct discharge were collateral consequences about which they should not speculate. In giving this instruction, he heavily relied on the decision of this Court in *United States v. Henderson*, 29 MJ 221, 222 (1989), where this Court held that the military judge was "within his discretion in finding that estimates of appellant's benefits loss were so collateral as to be confusing and thus inadmissible. Mil.R.Evid. 403...." This Court also held in that case that the military judge committed no error in failing to give instructions to the members regarding the effects of a bad-conduct discharge on the loss of retirement benefits.

*Henderson*, however, was 3 years away from being retirement eligible and had to re-enlist to reach his anticipated retirement date. Moreover, we noted that none of the panel members in *Henderson* had questions regarding the effects of a punitive discharge, that defense counsel was allowed to argue to the members that Henderson would lose all of his retirement benefits if he received such a punishment, and finally, that defense counsel did not object to the instructions which the military judge actually gave. *Id.* at 223.

Appellant, unlike Henderson, was but 9 weeks away from retirement eligibility, and he did not have to re-enlist to reach 20 years. Moreover, the members did have questions regarding the effects of a punitive discharge, and defense counsel did object to the military judge's failure to appropriately instruct the members on this matter. Finally, unlike *Henderson*, the military judge refused to allow counsel to present any additional argument on the issue before the members. Therefore, *Henderson* is easily distinguishable from the case at bar and did not require the military judge to give the collateral-consequences instruction in appellant's case. *See generally United States v. Quesinberry*, 12 USCMA 609, 612, 31 CMR 195, 198 (1962).

■ Nevertheless, the remaining question before us is whether it was an abuse of discretion for the judge to give the collateral-consequences instruction in this case. We note that the Uniform Code of Military Justice does not expressly require that a mili-

tary judge give any particular instructions on sentencing to the members of a court-martial. *Cf.* Art. 51(c), UCMJ, 10 USC § 851(c) (required instructions on findings). However, our case law has long made clear that a military judge does have a duty to give *appropriate* sentence instructions. We said long ago:

> Sentence is a vital part of a court-martial proceeding. *United States v. Allen,* 8 USCMA 504, 507, 25 CMR 8. During that stage of the trial, the law officer [now the military judge]'s responsibility to provide guidance to the court-martial is no less than his responsibility in regard to the findings. *United States v. Strand,* 6 USCMA 297, 20 CMR 13. He must be alert to the essentials of a fair trial throughout both stages. Just as he cannot disregard a theory of defense before findings, he cannot minimize matters in mitigation before sentence. There are, however, areas of discretion.

*Rake,* 11 USCMA at 160, 28 CMR at 384. Moreover, the President in the Manual has recognized this uncontroverted responsibility or duty of the military judge to give appropriate sentence instructions. *See* RCM 1005(a), Manual for Courts–Martial, United States, 1984 ("The military judge shall give the members *appropriate* instructions on sentence." (Emphasis added.)).

■ Whether a collateral-consequences instruction is appropriate in an individual case depends upon the particular facts and circumstances of that case. *See generally Quesinberry,* 12 USCMA at 612, 31 CMR at 198. Discretion is given to the military judge to determine whether such an instruction is appropriate, but that discretion is not unbridled. *See United States v. Wheeler,* 17 USCMA 274, 277, 38 CMR 72, 75 (1967); *Cook,* 11

USCMA at 581, 29 CMR at 397. It must be exercised in light of correct principles of applicable law, *United States v. Cook, supra,* as applied to the particular facts and circumstances of each case, *United States v. Slaton,* 6 MJ 254–55 (CMA 1979); *Wheeler, supra* at 277, 38 CMR at 75. We conclude that the broad collateral-consequences instruction given by appellant's military judge was an abuse of discretion because it was not tailored to the unique facts of appellant's case. *Id.*

■ Our bottom line on a collateral-consequences instruction is the same one this Court drew in *Rake, supra* at 160, 28 CMR at 384, *i.e.,* a judge "cannot minimize matters in mitigation before sentence." Such an instruction, if requested, might be given by a judge if the servicemember is nowhere near retirement eligibility. However, at the very least, where a servicemember is perilously close to retirement, as appellant, and the members join in his request for intelligent instruction on this important matter, a general collateral-consequences instruction disregarding the effects of a punitive discharge on retirement will not suffice. *See Griffin,* 25 MJ at 424 ("[I]t is only in a theoretical sense that the effect a punitive discharge has on retirement benefits can be labeled collateral.")[1] To the extent that the military judge in this case felt compelled by our case law to minimize this crucial military concern, he committed legal error and denied appellant a fair sentence hearing.[2] *See Cook,* 11 USCMA at 581–82, 29 CMR at 397–98; *see generally* RCM 1001(c)(1)(B)("Matter in mitigation of an offense is introduced to lessen the punishment to be adjudged by the court-martial, or to furnish grounds for a recommendation of clemency.").

[1] There is a significant potential for substantial litigation at the trial and appellate levels as to if and when a military judge may refuse to provide a retirement benefits instruction and give a collateral-consequences instruction in particular cases. The opportunity to avoid such unnecessary litigation rests initially with the Executive Branch. *See* Art. 36, Uniform Code of Military Justice, 10 USC § 836.

[2] The sample instructions in the Military Judges' Benchbook at 69–70 (Dept. of the Army Pamphlet 27–9 (30 Sept. 1990)) should be changed to conform to the decisions of this Court in *United States v. Sumrall,* 45 MJ 207 (1996), and *United States v. Griffin,* 25 MJ 423 (1988).

Those responsible for the revision should consider a further change to the standard instruction on punitive discharges that would make it clear that such a discharge terminates an individual's military status and the benefits that flow from such status, including the possibility of becoming a military retiree and receiving retired pay.

The decision of the United States Air Force Court of Criminal Appeals as to sentence is reversed. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Air Force. A rehearing on sentence may be ordered.

Chief Judge COX and Judges CRAWFORD, GIERKE, and EFFRON concur.