UNITED STATES, Appellee,

v.

**Brian R. PERRY, Ensign,
U.S. Navy, Appellant.**

No. 97–0023.
Crim.App. No. 95–0143.

U.S. Court of Appeals for
the Armed Forces.

Argued Jan. 12, 1998.

Decided July 9, 1998.

For Appellant: *Richard T. McNeil* (argued); *Lieutenant Leslie K. Burnett,* JAGC, USN (on brief).

For Appellee: *Lieutenant Russell J.E. Verby,* JAGC, USNR (argued); *Colonel Charles Wm. Dorman,* USMC, *Commander D.H. Myers,* JAGC, USN, and *Second Lieutenant David B. Ashe,* USMC (on brief); *Lieutenant Bennett J. Lee,* JAGC, USNR.

*Opinion of the Court*

GIERKE, Judge:

A general court-martial composed of officer members convicted appellant, on mixed pleas, of attempted sodomy, conduct unbecoming an officer (4 specifications), and committing indecent acts (6 specifications), in violation of Articles 80, 133, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 933, and 934, respectively. The court-martial sentenced appellant to a dismissal, confinement for 5 years, loss of lineal numbers, and total forfeitures. The convening authority approved the adjudged sentence but suspended confinement in excess of 4 years for 12 months from the date of trial. The Court of Criminal Appeals set aside the conviction of attempted sodomy but affirmed the remaining findings of guilty and the sentence.

Our Court granted review of the following issue:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE FAILED TO GIVE A PROPOSED INSTRUCTION REGARDING RECOUPMENT OF EXPENDITURES FOR APPELLANT'S EDUCATION AT THE U.S. NAVAL ACADEMY.

Appellant graduated from the U.S. Naval Academy in May 1993. He was convicted and sentenced in July 1994. Appellant had incurred a 5–year military service commitment in return for his education at the Naval Academy. During a discussion on sentencing instructions, appellant proposed the following instruction:

> A dismissal may cause Ensign Perry to be liable to reimburse the U.S. Government for all or a portion of the costs associated with his education at the U.S. Naval Academy. As computed by the U.S. Naval Academy, the total cost of education for the past four years is approximately $80,-000.

Defense counsel supported this request with a memorandum from the Naval Academy Comptroller that computed the cost of education and recited,

> In accordance with PL 96–357, and effective with the Class of 1985, if any individual fails to fulfill their commitment, they may be liable to reimburse the U.S. Government for all or a portion of the costs associated with their education at the Academy.

The military judge denied the request for an instruction on the possibility of reimbursement. He explained, "I don't see anything here that makes this a matter that I should instruct them [on] as a matter of law as to the potential consequences of dismissal." He offered appellant an opportunity to present additional evidence but declined to give the requested instruction because "[i]t's not evidence before the court."

Defense counsel responded that he was "puzzled by the judge's ruling" because "it's a strong probability" that an Academy graduate who fails to fulfill the service requirement "may be liable to reimburse the Government." The military judge responded again:

> [I]t's not evidence before the court. You're asking me to instruct them on law. If I'm going to instruct them on this law, as you're asking me to do, then I will want to see some regulation, some implementing feature—I'd like to know a history of do they do it in a case such as this, is there any reason to believe that will happen here, other than this general assessment of 1 March '94 to the midshipmen.

The military judge concluded by explaining:

> There are a lot of public laws that never come into play in terms of regulations that implement them and collections that would be applicable specifically to a case such as this one. I doubt you could make a showing necessary to get me to give that instruction, but you certainly can try.

Defense counsel concluded his argument by saying, "I've tried. The objection, obviously, is noted for the record."

During sentencing argument, defense counsel told the members: "Now, right up front I'm going to tell you what I think is an appropriate sentence in this case. We think a dismissal, total forfeitures of pay and allowances, and we think confinement not to exceed one year would be appropriate."

Appellant now contends that the military judge abused his discretion by refusing to instruct the members on the possibility of government recoupment of the cost of his education. The Government responds that the military judge did not abuse his discretion because the claimed collateral consequence was too remote. The Government points out that appellant failed to avail himself of the opportunity to present evidence on the recoupment issue. Finally, the Government argues that any error in refusing to instruct on the issue was harmless because the defense conceded that dismissal and total forfeitures were appropriate punishments.

Public Law No. 96–357, on which the defense relied at trial, is codified in 10 USC § 2005. Under § 2005(f) of this statute, cadets and midshipmen must execute agreements to serve on active duty for specific

periods. Cadets and midshipmen must also agree to reimburse the United States for their educational expenses if they, "voluntarily or because of misconduct," fail to serve for "the period of active duty specified in the agreement." Under § 2005(g)(2), a cadet or midshipmen "who may be subject to a reimbursement requirement" is entitled to notice of the requirement "before (1) submitting a request for voluntary separation, or (2) making a decision on a course of action regarding personal involvement in administrative, non-judicial, and judicial action resulting from alleged misconduct." Under § 2005(g)(1), before collection action is initiated, a factfinding hearing must be conducted "in order to determine the validity of the debt." Finally, under § 2005(h), the Secretary of the military department concerned may modify a service agreement to reduce the active-duty obligation "if the Secretary determines that it is in the best interests of the United States to do so."

▬ An accused has a broad right to present mitigation evidence. *United States v. Becker*, 46 MJ 141, 143 (1997). This Court has recognized that the financial impact of a punitive discharge may be relevant on sentencing, provided that it is a direct and proximate consequence of the punitive discharge and not merely a potential collateral consequence. *Id.* (error to exclude evidence of retirement benefits of accused only 3½ months from retirement without reenlisting); *United States v. Greaves*, 46 MJ 133 (1997) (generic instruction on collateral consequences of punitive discharge inadequate where accused was 2 months from retirement without reenlisting); *United States v. Griffin*, 25 MJ 423 (CMA 1988) (no error to instruct on impact of punitive discharge on retirement where accused was retirement eligible).

▬ We review a military judge's decision whether and how to instruct on the consequences of a sentence for abuse of discretion. *Greaves*, 46 MJ at 139. We hold that the military judge did not abuse his discretion in this case.

The military judge's refusal to give the requested instruction was founded on a lack of evidence. Defense counsel proffered only a memorandum based on an enabling statute that authorizes the Secretary of the Navy to recoup educational costs but also gives the Secretary broad authority to waive the service requirement. The internal publication from the Naval Academy reflects the discretionary nature of the Secretary's authority by announcing that individuals who fail to fulfill the service requirement "may be liable" to reimburse the United States. Although given ample opportunity, the defense offered no evidence that the Secretary of the Navy routinely initiated collection action or that such action was contemplated in this case. The defense offered no evidence that appellant had received the statutory notice required by § 2005(g)(2). In short, there was no evidentiary predicate for the requested instruction. *See United States v. Van Syoc*, 36 MJ 461, 464 (CMA 1993) (duty to instruct arises when "some evidence" is presented raising the issue). Accordingly, we hold that the military judge did not abuse his discretion.

The decision of the United States Navy–Marine Corps Court of Criminal Appeals is affirmed.

Chief Judge COX and Judge CRAWFORD concur.

EFFRON, Judge (concurring in part and in the result):

In this case, appellant sought a sentencing instruction asking that the members take into account the possibility that a dismissal "may cause Ensign Perry to be liable to reimburse the U.S. Government for all or a portion of the costs associated with his education at the U.S. Naval Academy." The requested instruction also would have stated that the cost "is approximately $80,000."

Reimbursement of educational costs is not the normal consequence of a punitive separation. Under specified statutory and regulatory circumstances, however, reimbursement may be obtained. 10 USC § 2005; Department of Defense Directive 1332.23 (Feb. 19, 1988). The statute applies only to those who sign an agreement providing for reimburse-

ment and also contains specific notice requirements.

At trial, appellant did not introduce into evidence or ask the military judge to take judicial notice of the applicable statutes or regulations, and appellant did not introduce any evidence that he had signed such an agreement or that he had received the applicable notice. He simply introduced a Naval Academy memorandum generally directed at all midshipmen addressing the possibility of reimbursement.

Under these circumstances, I cannot agree with our colleague who contends in his partial dissent that truth in sentencing required the military judge to give the requested instruction. A military accused who requests a non-standard instruction must, at a minimum, establish both the legal and factual predicates for the request. If, in fact, this appellant was not subject to a reimbursement requirement, the result of the instruction would not have been truth in sentencing but, instead, a highly misleading suggestion that the dismissal would result in an $80,000 penalty. In this case, appellant was in the best position to know whether he had signed such an agreement and whether he had received the applicable notice. Moreover, if he had not retained the applicable records, it should not have been difficult for him to obtain the relevant information from Navy personnel officials. Having failed to introduce such matters into evidence, he cannot complain that the military judge erred in declining to give the requested instruction.

Although I generally agree with the approach of the majority, I do not join in the broad and generalized suggestion in the majority opinion that this Court's recognition of the right to present evidence of the financial impact of a punitive discharge is limited to cases in which "it is a direct and proximate consequence of the punitive discharge and not merely a potential collateral consequence." 48 MJ at 199. That suggestion is not necessary to the majority's holding, which is based upon the conclusion that appellant failed to provide sufficient evidence to serve as a foundation for the proposed in-

struction. Moreover, it is inconsistent with established trial practice and our precedents.

The standard instruction in the Military Judges' Benchbook clearly addresses the potential collateral consequences of a punitive separation by noting that a punitive separation can affect "employment opportunities" as well as "economic opportunities" and "social acceptability." The instruction also notes that a punitive separation "deprives one of substantially all benefits administered by the Department of Veterans Affairs...." Military Judges' Benchbook at 69–70 (Dept. of the Army Pamphlet 27–9) (30 Sept. 1996). There is no rational basis for a policy that would distinguish between permissible instructions regarding the effect on VA benefits and impermissible instructions about the specific financial consequences of a Department of Defense reimbursement requirement triggered by a punitive separation. Our recent decisions in *United States v. Becker*, 46 MJ 141 (1997), and *United States v. Greaves*, 46 MJ 133 (1997), both cited by the majority, found error when the military judge failed to give a requested instruction concerning the potential loss of retirement benefits by servicemembers who—although close to retirement eligibility—were not retirement-eligible at the time of sentencing.

My concern is that the standard suggested by the majority, in light of established practice and our precedents, will lead to increased litigation as counsel and judges struggle to discern the differences, if any, between the phrases "direct and proximate consequence" and "potential collateral consequence." There is no need to delay the trial process and burden the appellate process with such matters. The goal of arriving at a fair and appropriate sentence can be met best by providing the members with clear instructions about all applicable consequences of a punitive separation. *See, e.g., Greaves*, 46 MJ at 139 n. 2.

Military personnel policy does not involve a remote, inaccessible, or exotic area of law. The applicable statutes and regulations are readily available to the practitioners of military law and are quite familiar to most practitioners. Identifying the potential conse-

quences of a punitive separation, in most cases, is not a particularly complex task. The goal of truth in sentencing is a worthy objective. That goal can best be served through issuance of clear guidance about the consequences of a punitive separation and by addressing any remaining issues through litigation that clearly identifies both the applicable legal principles and relevant evidentiary matters.

SULLIVAN, Judge (dissenting in part and concurring in the result):

Truth in sentencing promotes justice in a particular case and confidence in the military justice system as a whole. *See United States v. Martin,* 39 MJ 481, 482–83 (CMA 1994) (Sullivan, J., dissenting) ("Judge not the play before the play is done."). Quite frankly, the majority opinion violates the principle of truth in sentencing. Ignorant or misinformed juries cannot be expected to do their duty and decide the case before them without a proper understanding and appreciation of the facts in a particular case. Here, it was a statutory (10 USC § 2005) and proven (Comptroller memorandum) fact that, if appellant was dismissed from the service for his offenses, *then he could be* required to pay the United States Government $80,000 for his education at the Naval Academy.*

The defense in this case proposed the following instruction:

A dismissal *may* cause Ensign Perry to be liable to reimburse the U.S. Government for all or a portion of the costs associated with his education at the U.S. Naval Academy. As computed by the U.S. Naval Academy, the total cost of education for the past four years is approximately $80,000.

(Emphasis added.) The majority holds that "there was no evidentiary predicate for the requested instruction." 48 MJ at 199. Such a holding ignores the language of 10 USC § 2005 and the Naval Academy Memorandum on educational reimbursement. Since the defense did not argue, as the majority suggests, that this recoupment was mandatory, no evidence had to be introduced establishing that fact.

The defense did offer evidence concerning the recoupment practice, as well as citing the judge to 10 USC § 2005. A Naval Academy memorandum states:

7100

1 March 1994

MEMORANDUM

From:   Comptroller

To:     Midshipmen Personnel

Via:    (1) Commandant

        (2) Deputy for Management

Subj:   REIMBURSEMENT OF EDUCATION ASSISTANCE COSTS, PUBLIC LAW 96–357

* *See* Department of Defense Directive 1332.23 (Feb. 19, 1988), Section F.2., which states:

2. *Active Duty Commitment and Reimbursement Agreement for Service Academy Students.* Active duty service is the primary means of reimbursement for education. Cadets or midshipmen who are not ordered to active duty due to their misconduct or because they petition to be relieved of active duty obligations may be required to reimburse the Government for the cost of their advanced education.

a. As a condition for providing education at a Service academy, the Secretary of the Military Department concerned shall require *that each cadet or midshipman enter into a written agreement in which he or she agrees to do the following:*

(1) To complete the educational requirements specified in the agreement and to serve on active duty for a period specified in the agreement if called to active duty or, at the option of the Secretary of the Military Department con-

cerned, to reimburse the United States, as prescribed in subparagraph F.2.a.(3) below.

(2) That if such cadet or midshipman fails to complete the education requirements specified in the agreement, such person if so ordered by the Secretary of the Military Department concerned, shall serve on active duty for a period specified in the agreement.

(3) *That if such person, with the approval of the Secretary concerned or because of misconduct, voluntarily fails to complete the period of active duty specified in the agreement, he or she shall reimburse the United States in an amount that bears the same ratio to the total cost of advanced education received as the unserved portion of active duty bears to the total period of active duty such person agreed to serve.*

(4) To such other terms and conditions as the Secretary concerned may prescribe to protect U.S. interest.

(Emphasis added.)

Encl: (1) FY 1993 Cost of Education report

1. Up to and including the Class of 1995, a graduate of the U.S. Naval Academy incurs a five year military commitment. Effective with the Class of 1996, a six year military commitment is incurred. In accordance with PL 96–357, and effective with the class of 1985, if any individual fails to fulfill their commitment, they may be liable to reimburse the U.S. Government for all or a portion of the costs associated with their education at the Academy. As computed by USNA, the cost of education for each of the past four years is as follows:

| | |
|---|---|
| FY 1990 | $18,272 |
| FY 1991 | 19,404 |
| FY 1992 | 20,895 |
| FY 1993 | 21,573 |

2. The FY 1994 Cost of Education is projected to be $22,220. This equates to the FY 1993 cost inflated by 3%. Recommend using this projection for determining required reimbursement for midshipmen released during FY 1994.

3. When the actual FY 1994 Cost of Education is calculated at the end of the fiscal year, a projected FY 1995 cost will be provided.

4. Enclosed is a copy of USNA's FY 1993 Cost of Education report.

G.D. EBERLING

The requested instruction was not couched in language suggesting recoupment was mandatory. The pertinent question, thus, was whether the fact of possible recoupment upon dismissal of the midshipmen was a matter the members should have been aware of in arriving at an appropriate punishment. *See generally* RCM 1001(c)(1)(B), Manual for Courts–Martial, United States, 1984 (1994 ed.); *United States v. Greaves,* 46 MJ 133, 139 (1997). In my view, the realities of military life cannot be ignored at a court-martial, and the members should have been instructed on this matter in appellant's case. *See United States v. Becker,* 46 MJ 141, 144 (1997) (evidence of unique impact of punitive discharge on a servicemember may be single most important consideration in the case). Accordingly, I would find error here.

I am not persuaded, however, that appellant was substantially prejudiced by the judge's decision not to instruct on this matter. Art. 59(a), UCMJ, 10 USC § 859(a). He did offer the defense the opportunity to raise this matter in appellant's unsworn statement, which it chose not to do. Moreover, the defense argued that an appropriate punishment in this case would include a punitive discharge and total forfeitures. Finally, appellant was found guilty of numerous offenses of a serious nature involving sexual abuse of two minor boys. Thus, it can be expected that the punishment might not have been substantially affected by the statutory possibility of educational expense recoupment. Accordingly, I also vote to affirm the sentence in this case.