# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

**No. ACM S32520**

————————————

**UNITED STATES**
*Appellee*

**v.**

**Kyle B. HART**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 24 July 2019

————————————

*Military Judge:* Joseph S. Imburgia.

*Approved sentence:* Bad-conduct discharge, confinement for 1 month, forfeiture of $1,093.00 pay per month for 1 month, reduction to E-1, and a reprimand. Sentence adjudged 7 March 2018 by SpCM convened at Joint Base Pearl Harbor-Hickam, Hawaii.

*For Appellant:* Major Jarett F. Merk, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Captain Peter F. Kellett, USAF; Mary Ellen Payne, Esquire.

Before J. JOHNSON, POSCH, and KEY, *Appellate Military Judges.*

Judge KEY delivered the opinion of the court, in which Senior Judge J. JOHNSON and Judge POSCH joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.**

————————————

KEY, Judge:

Appellant was found guilty by a military judge, in accordance with his pleas and pursuant to a pretrial agreement, of four specifications of wrongful

use of controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 912a.[1] A panel of officer members announced a sentence of a bad-conduct discharge, confinement for one month, forfeiture of $1,092.00[2] pay per month for one month, reduction to the grade of E-1, and a reprimand. The convening authority approved the sentence as adjudged.

Appellant raises two issues for our consideration: (1) whether the military judge committed plain error by not instructing the members how to consider evidence that Appellant inhaled methamphetamine smoke twice in succession, when he was charged with only a single use, and (2) whether the convening authority failed to consider Appellant's complete clemency submission. In addition, although not raised as an issue, we address an error in the record with respect to the announcement of the sentence. We affirm the findings and modify the sentence.

## I. BACKGROUND

On 4 November 2017, Appellant invited a new civilian acquaintance to his home. This new acquaintance invited five other civilians to Appellant's house, some of whom brought drugs with them. One of the visitors began smoking methamphetamine with a pipe and offered some to Appellant. Appellant ingested the methamphetamine via a method he called "shotgunning," in which the visitor with the pipe first inhaled smoke from the pipe and then exhaled the smoke into Appellant's mouth. Appellant inhaled methamphetamine smoke twice in this fashion. Appellant testified these two instances of "shotgunning" were "back to back" and in "pretty quick[ ]" succession. To counteract the anxiety he felt from smoking methamphetamine, Appellant ingested three marijuana-laced gummy candies he received from another visitor. Later in the evening, Appellant consumed a liquid brought by one of the visitors that contained "ecstasy." At some point after consuming the infused liquid, a visitor offered Appellant cocaine, which Appellant snorted twice with about three minutes between ingestions.

---

[1] All references in this opinion to the Uniform Code of Military Justice (UCMJ) and Rules for Courts-Martial are to the UCMJ and rules found in the *Manual for Courts-Martial, United States* (2016 ed.).

[2] As explained in further detail later in this opinion, the members announced a sentence to forfeitures of $1,092.00, but the number was errantly recorded in the trial transcript as $1,093.00. Post-trial processing documents indicate the convening authority intended to approve a sentence to the lower amount.

On 8 November 2017, Appellant was randomly selected for urinalysis testing. The subsequent analysis of Appellant's urine disclosed evidence of Appellant's ingestion of methamphetamine, marijuana, 3,4-methylenedioxy-methamphetamine (ecstasy), and cocaine. Appellant was charged with a single use of each drug.

## II. DISCUSSION

### A. Number of Uses of Methamphetamine

#### 1. Additional Background

During Appellant's providence inquiry—after Appellant said he inhaled methamphetamine twice using the "shotgunning" method—the following colloquy occurred:

> MJ [military judge]: You've only been charged with using methamphetamine one time. Is that your understanding? A single use?
>
> ACC [Accused]: Yes, Your Honor.
>
> MJ: What you described to me were essentially two use[s] . . . arguably. They're not charged as two uses. It seems like the government has chosen to treat this as one single transaction. So you're not charged with divers uses, even though you've described to me two times when this other individual blew the meth into you; into your lungs. Do you understand that distinction?
>
> ACC: Yes, sir.
>
> MJ: So I'm not finding you guilty of using methamphetamine on divers occasions. "Divers occasion" meaning more than one time. Do you understand that?
>
> ACC: Yes, Your Honor.
>
> MJ: So for the purposes of this trial, we're treating those two as one use. So when I ask you questions about your use, I'm—despite the fact there's only one—I'm kind of talking about both of those two ingestions. You understand that distinction?
>
> ACC: Yes, Your Honor.

Neither trial counsel nor trial defense counsel raised any objections or concerns with respect to the above colloquy, and the colloquy was included in the providence inquiry recording later played for the members.

After the providence inquiry recording was played, one member—Colonel (Col) JK—asked, "Are you admitting to wrongful use of drugs on 10 October, 4 November, and 8 November?"[3] The military judge responded to the question as follows:

> The short answer to that is "No." The issue with the charged time period and you have multiple dates—this is a date range during which the accused has been alleged to have used that substance on one occasion. So, the accused has been charged with a single use of all four of these drugs at some point during that charged time period. The end of the charged time period is tied to the urinalysis that was collected; the urine sample that was collected. And then you "backdate from there" is kind of how the charging window is created. And then you heard the accused, as the *Care*[4] inquiry was played back to you, explain to you when that one occasion was.

(Footnote added.)

**2. Law**

Rule for Courts-Martial (R.C.M.) 1005(a) requires the military judge to "give the members appropriate instructions on sentence." We review a military judge's sentencing instructions for abuse of discretion. *United States v. Hopkins*, 56 M.J. 393, 395 (C.A.A.F. 2002) (citing *United States v. Greaves*, 46 M.J. 133, 138 (C.A.A.F. 1997)). "The military judge has considerable discretion in tailoring instructions to the evidence and law." *Id.* "Failure to object to an instruction or to omission of an instruction before the members close to deliberate on the sentence constitutes waiver of the objection in the absence of plain error." R.C.M. 1005(f).

Appellant did not request or object to any instructions at trial pertaining to whether his drug use consisted of single or multiple uses. As a result, we review for plain error. *United States v. Andrews*, 77 M.J. 393, 398 (C.A.A.F. 2018). To prevail, Appellant bears the burden of establishing (1) error, (2) that is clear or obvious, (3) that results in material prejudice to a substantial

---

[3] Appellant was charged in Specifications 1, 2, and 3 with wrongful use of 3,4-methylenedioxymethamphetamine, cocaine, and methamphetamine, respectively, "between on or about 4 November 2017 and on or about 8 November 2017." He was charged in Specification 4 of wrongfully using marijuana "between on or about 10 October 2017 and on or about 8 November 2017."

[4] *United States v. Care*, 40 C.M.R. 247 (C.M.A. 1969).

right of his. *Id.* at 401. "[A]ll three prongs must be satisfied." *United States v. Robinson*, 77 M.J. 294, 299 (C.A.A.F. 2018) (citation and internal quotation marks omitted). Material prejudice is "a reasonable probability that, but for the error [claimed], the outcome of the proceeding would have been different." *Id.* (citation and internal quotation marks omitted).

### 3. Analysis

With respect to the military judge's colloquy regarding the number of times Appellant used methamphetamine, Appellant has failed to demonstrate any error, plain or otherwise. During Appellant's providence inquiry, the military judge explained that Appellant was not charged with multiple uses of methamphetamine and that Appellant's back-to-back inhalations of the drug would be treated as one use. That inquiry was recorded and played back for the members. Prior to the members' sentencing deliberations, the military judge instructed the panel members that their duty was "to vote for a proper sentence for the offenses of which the accused has been found guilty."

Appellant was charged with and convicted of a single use of methamphetamine, and the military judge explained both that Appellant had not been charged with divers uses and that the two inhalations would be treated as a single transaction.[5] The military judge accurately stated the charged offense, and he accurately explained how the facts of the case applied to the offense as charged. The military judge's discussion of the issue instructed that Appellant's two inhalations were to be treated as a single use. To the extent the members may have misunderstood the military judge's comments during the providence inquiry, the military judge further clarified the evidence and charged offenses when he answered Col JK's question by explaining, "the accused has been charged with a single use of all four of these drugs at some point during that charged time period. . . . [Y]ou heard the accused, as the *Care* inquiry was played back to you, explain to you when that one occasion was."[6] The members were thus advised Appellant had pleaded guilty to a sin-

---

[5] Although not addressed by Appellant, his cocaine use similarly involved two ingestions separated by a brief period of time. The military judge characterized Appellant's cocaine use as "kind of like a continual thing." We agree, and our analysis of Appellant's methamphetamine use applies equally to his cocaine use.

[6] The stipulation of fact admitted at trial provided that all of Appellant's drug use occurred the night of 4 November 2017 and in the early morning of 5 November 2017. Appellant verbally stated the same during his providence inquiry. The written stipulation was provided to the members.

gle use of four different drugs—multiple ingestions notwithstanding—and that the court was to consider the use of each drug as a single use. Appellant has failed to demonstrate that there was anything incorrect or prejudicial with the military judge's comments or instructions, and we are convinced the members were not left with a misunderstanding of either the scope of Appellant's drug use or how that use was to be considered for purposes of sentencing.[7] Appellant has not identified error, much less plain error, with respect to the instructions given by the military judge.

## B. Completeness of Clemency Submission

### 1. Additional Background

Appellant's trial concluded on 7 March 2018. The record of trial forwarded for our review includes a staff judge advocate's recommendation (SJAR) dated 17 April 2018 explaining that the convening authority had the authority to disapprove, commute, or suspend any part of the sentence except the bad-conduct discharge. The staff judge advocate (SJA) recommended the convening authority approve the sentence as adjudged. The next document in the record of trial is an addendum to the SJAR, dated 1 May 2018, which lists "Accused's Clemency Submission, dtd 26 Apr 18" as the second attachment. This addendum advised the convening authority that Appellant had submitted clemency matters requesting disapproval of the adjudged bad-conduct discharge and that the convening authority "must consider these matters [in Attachment 2] before taking final action in this case." The attachment consists of a one-page letter from Appellant and three character statements. Appellant's letter ends mid-sentence at the end of the page and has no signature or signature block.

Following the addendum is a second addendum, dated 2 May 2018, explaining that the first addendum had been served on Appellant and that Appellant declined to submit additional matters. The second addendum lists the clemency submission as an attachment, but the second addendum's attachments are not included in the record of trial (rather, the reader is referred to the attachments to the first addendum). The second addendum reminded the convening authority that he must consider Appellant's clemency submission,

---

[7] Appellant has not explained what instruction he believes the military judge should have given, arguing only that the military judge should have either: (1) directed the colloquy pertaining to the multiple uses be redacted from the recorded providence inquiry, or (2) instructed the members "as to how they could consider those 'two uses' in their deliberations on sentence."

and the convening authority signed a statement that he had considered the second addendum's attachments before taking action.

We ordered the Government to show cause why new post-trial processing or other corrective action was not required due to the apparent missing portion of Appellant's clemency letter. The Government conceded that the record of trial was incomplete insofar as it was missing the second page of Appellant's clemency memorandum. The Government argued that the error was administrative and that the convening authority actually did review a complete clemency submission. In support of its arguments, the Government submitted declarations from the legal office's noncommissioned officer in charge (NCOIC) of military justice, the SJA, and the convening authority, along with the complete clemency package including the second page of Appellant's letter.

The NCOIC asserts in his declaration that the legal office's electronic files contain both a complete clemency package and one missing the second page of Appellant's clemency letter. He surmises that the complete package was provided to the convening authority prior to action being taken on the case, but that the incomplete version was included in the record of trial when that record was later assembled. The SJA recalls identifying an incomplete clemency submission in one court-martial, but he does not recall if it was Appellant's court-martial or some other case. He says he would have noticed any incomplete clemency package, because he specifically reviews those submissions before sending them to the convening authority. The convening authority states that he does not recall Appellant's clemency submission, but that he always reviews such submissions, and he believes he would have noticed a missing page. Both the SJA and the convening authority state that after reviewing the second page of the clemency memorandum, they would not change their respective advice and action.

Regarding the document at issue here—Appellant's clemency letter—the first page summarizes Appellant's duty achievements and asks the convening authority to disapprove the adjudged bad-conduct discharge. The last, incomplete, line on the page is: "Through everything that has transpired, I still defend the Air Force and the Military Justice System, though it pains me deeply;" the second page reads, in its entirety:

> to know that it views me as a criminal now. I trusted my attorneys, I trusted the panel members, and now I am trusting you. I am attaching character letters for you to read that were attached to my sentencing package, all from leaders who have worked with me. I hope that you will find it worth your time to go over these, so you can see that I am more than a violation of Article 112a.

I know that you are a busy man and I am sorry that my mistake has made you even busier. I just make one final plea, Sir, on behalf of someone who would do anything for their country. Please don't make me an example for what can happen to offenders, ruining any chance I have at putting my life back together again. May God guide and lead you to a just decision. Thank you.

**2. Law**

Proper completion of post-trial processing is a question of law we review de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)).

An accused may submit written matters to the convening authority for consideration with respect to the findings and sentence of a given case. Article 60(b)(1), UCMJ, 10 U.S.C. § 860(b)(1); R.C.M. 1105. Before taking action on the findings or sentence in a case, the convening authority must consider any matters submitted by the accused under R.C.M. 1105. *See* R.C.M. 1107(b)(3)(iii). The record of trial must demonstrate that the convening authority did in fact consider post-trial matters submitted by Appellant before taking action. *United States v. Craig*, 28 M.J. 321, 324–25 (C.M.A. 1989).

The convening authority is also required to obtain and consider the SJA's written recommendation before taking action on any general court-martial case or any special court-martial case in which a bad-conduct discharge has been adjudged. Article 60(e), UCMJ, 10 U.S.C. § 860(e). This recommendation must be served on the accused. *Id.* Air Force practice is to serve the SJAR on the accused and then attach any matters submitted by an accused or defense counsel to an addendum to the SJAR, which is then provided to the convening authority. Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶¶ 8.19, 8.20 (18 Dec. 2017). When an SJA prepares an addendum to an SJAR "stating that matters submitted by the defense are attached to the addendum and the convening authority must consider these matters before taking action on the case," the Government is "entitled to rely on a presumption of regularity with respect to whether the convening authority has performed his responsibilities in a proper manner." *United States v. Foy*, 30 M.J. 664, 665–66 (A.F.C.M.R. 1990).

"Because of the highly discretionary nature of the convening authority's action on [a] sentence," we grant relief for errors in the clemency process if Appellant presents "some colorable showing of possible prejudice" affecting his opportunity for clemency. *Kho*, 54 M.J. at 65 (quoting *United States v. Wheelus*, 49 M.J. 283, 289 (C.A.A.F. 1998)).

### 3. Analysis

Neither Appellant nor the Government has conclusively established whether or not the convening authority received and considered the second page of Appellant's clemency letter. Appellant relies on the fact the page is missing in the record of trial as proof the convening authority never reviewed it. The Government, meanwhile, points to the SJA's and convening authority's regular practices of reviewing all clemency materials and their beliefs they would have caught the error at the time they reviewed the matters in Appellant's case. Neither the SJA nor the convening authority specifically recalls the clemency package in this case, and the military justice NCOIC's declaration evidences a similar lack of clear recollection.

Although a close call, we conclude that Appellant has not met his burden in demonstrating error—that is, that the second page of his clemency statement was not actually provided to the convening authority. First, the SJA and convening authority have provided declarations explaining their common practices of reviewing clemency matters submitted by an accused. Second, the SJA—on two different occasions—advised the convening authority that he was required to consider these matters. Third, the convening authority attested at the time of taking action that he had considered Appellant's submission. And, fourth, even a cursory review of the matters would have revealed a missing second page of Appellant's letter due to the first page ending mid-sentence and having no signature or signature block. Considering these facts, we conclude the NCOIC's assessment that a complete package was provided to the convening authority for review, while an incomplete one was errantly included in the record of trial, is what actually occurred. As such, Appellant has not met his burden of showing error was committed other than in the administrative post-action assembly of the record of trial.

Even if we were to conclude that the convening authority was not given the second page of Appellant's clemency letter before taking action, Appellant has not demonstrated a colorable showing of possible prejudice. On the first page of Appellant's letter, Appellant asked the convening authority to disapprove the adjudged bad-conduct discharge based upon AFI 51-201, ¶ 8.17.1. This paragraph implements Article 60(c)(4)(B), UCMJ, 10 U.S.C. § 860(c)(4)(B), which operates as an exception to the general rule that a convening authority may not disapprove, commute, or suspend a bad-conduct discharge. This exception requires—as a prerequisite—a recommendation from trial counsel for leniency based upon assistance provided by an accused in investigating or prosecuting other cases. According to the SJAR addendum, Appellant neither provided such assistance nor did trial counsel make the required recommendation. Appellant has not demonstrated or argued to the contrary.

In addition, a careful review of the second page of Appellant's letter yields little information likely to sway a reviewer. In essence, Appellant states in the second page that he trusts the convening authority, he has attached character letters, and he is sorry for impinging on the convening authority's time. Appellant further asks the convening authority to not "make [him] an example for what can happen to offenders, ruining any chance [he would have] at putting [his] life back together again." Considering both pages of Appellant's letter, the language on the second page does not provide any additional information likely to have resulted in a different action, especially in light of the fact that the convening authority had no power to grant the one thing Appellant was asking him to do: disapprove the adjudged bad-conduct discharge. Thus, Appellant has not established a colorable showing of prejudice, even if we were to assume the convening authority never saw the second page of his letter.

## C. Announcement of Sentence

According to the trial transcript, the court-martial president announced a sentence including forfeitures of $1,093.00 for one month, but the panel's worksheet indicates forfeitures of $1,092.00 for one month. The panel was instructed that the latter amount was the maximum monthly forfeiture for an E-1, and all post-trial processing documents in the record of trial—to include the report of result of trial attached to the SJAR—describe the amount adjudged as $1,092.00. The convening authority's action, however, approved the sentence set out in the authenticated record of trial, which included the higher forfeiture amount.

We ordered the Government to show cause why the record should not be returned for correction. The Government submitted an affidavit from the military justice NCOIC indicating that a subsequent review of the audio recording of the proceedings revealed the president of the court announced forfeitures in the amount of $1,092.00. Apparently, that number was errantly transcribed as $1,093.00. Appellant did not object to the Government's response to our order. Due to the minor nature of the error and the lack of dispute over the issue, we will correct the error based upon the Government's affidavit by only approving forfeitures of $1,092.00. *See United States v. Solak*, 28 C.M.R. 6, 10–11 (C.M.A. 1959).

### III. CONCLUSION

We approve only so much of the sentence as provides for a bad-conduct discharge, confinement for one month, forfeiture of $1,092.00 pay per month for one month, reduction to the grade of E-1, and a reprimand. Article 66(c), UCMJ, 10 U.S.C. § 866(c). The findings approved by the convening authority are correct in law and fact, and no error materially prejudicial to the substan-

tial rights of Appellant occurred. Article 59(a), UCMJ, 10 U.S.C. § 859(a). Accordingly, the approved findings and the modified sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court