**UNITED STATES**

v.

**Captain Gregory A. BOYD, United States Air Force.**

**ACM 33483.**

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 20 Oct. 1998.

Decided 17 Feb. 2000.

Appellate Counsel for Appellant: Colonel Theodore J. Fink, Colonel Jeanne M. Rueth, and Major Margo Stone Newton.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A. Rodgers, and Captain James C. Fraser.

Before YOUNG, Senior Judge, SPISAK, Senior Judge, and WILCOX, Appellate Military Judge.

## OPINION OF THE COURT

SPISAK, Senior Judge:

The appellant pled guilty to damaging and stealing military property, wrongfully using three different controlled substances, and conduct unbecoming an officer in violation of Articles 108, 121, 112a and 133, UCMJ, 10 U.S.C. §§ 908, 921, 912a, 933. His approved sentence consists of a dismissal, confinement for 80 days, and forfeiture of $215.00 pay per month for 3 months.

The appellant raises three errors for our consideration: (1) The military judge erred when he instructed that military confinement facilities must make mental health care professionals available and that the United States Disciplinary Barracks (USDB) has a drug rehabilitation program; (2) The assistant trial counsel erred when she argued that the appellant could receive substance abuse treatment while confined; (3) The military judge erred by not instructing the members on the loss of retirement benefits which could result from a dismissal. We find no error and affirm.

## I. FACTS

The appellant was a nurse in the Intensive Care Unit (ICU) at the Eglin Air Force Base Hospital. Between 1 July 1997 and 3 August

1997, he took 111 tubexes (vials) of Meperidine, 73 vials of Morphine, and one vial of Versed, for his own use. All three of these drugs are controlled substances. He used the Morphine and Meperidine to alleviate withdrawal symptoms caused by his drug addiction. In addition, the appellant withdrew portions of the contents of 22 vials of Meperidine and 3 bottles of Morphine. He replaced the drugs with a sterile saline solution, thereby diluting the drugs, then returned the vials and bottles to the drug storage unit. On 3 August 1997, while at work in the ICU and in uniform, the appellant injected himself with Versed.

## II. PLAIN ERROR

Two of the appellant's assertions of error are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). The appellant first complains that the military judge erred by instructing the members that he had taken judicial notice of certain facts and that

> [M]ilitary confinement facilities are required to make available mental health care professionals to assist in treating prisoners presenting personality or psychiatric disorders and that treatment for substance abuse is commonly available to military confinees. You may consider these matters and give them whatever weight you deem appropriate in adjudging a sentence in this case.

The appellant then complains that the assistant trial counsel erred by arguing that "the judge will instruct you that in our confinement facilities, he will be able to continue with his rehabilitation. He will be able to get therapy. There are narcotic classes."

■■■ Before addressing these specific issues, however, we note that trial defense counsel did not object to either the instruction or argument. Absent a timely objection, an error in sentencing instructions waives any error that does not rise to the level of "plain error." Rule for Courts–Martial

(R.C.M.) 1005(f); *United States v. Griffin*, 25 M.J. 423, 425 (C.M.A.1988). Similarly, absent plain error, a failure to object to argument at trial waives the issue on appeal. R.C.M. 1001(g); *United States v. Ramos*, 42 M.J. 392, 397 (1995). Therefore, in order for the appellant to prevail, he must demonstrate the existence of "plain error."

A. **Plain Error in the Courts of Criminal Appeals**

In *United States v. Olano*, 507 U.S. 725, 732–34, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court set forth a simple three-part definition for plain error: (1) Error, (2) that is plain, that is clear or obvious, and (3) affects a substantial right of the accused. Later, the Court explained that even if the test for plain error is met, an appellate court need not take corrective action unless the error also "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 466–67, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997).

In 1998, the United States Court of Appeals for the Armed Forces (USCAAF) held that the *Olano* definition of plain error has only limited applicability in the Courts of Criminal Appeals. *United States v. Powell*, 49 M.J. 460 (1998). Specifically, USCAAF pointed out that service courts of criminal appeals are not discretionary and that the Federal Rules of Criminal Procedure (Fed. R.Crim.P.) do not apply to us.[1] *Id.* at 464. Thus, the *Olano* definition of plain error, which was based on Fed.R.Crim.P. 52(b), is of limited value to us because the Military Rules of Evidence "are somewhat different," and our own rules are more demanding. *Id.* at 464; *see* Article 59(a), UCMJ, 10 U.S.C. § 859(a), and Mil.R.Evid. 103(d).

B. **The Impact of Article 66(c) on the Plain Error Analysis**

It is clear from the language of Article 66(c) that our Court has much broader authority than most courts of appeals.

---

1. We note that the United States Court of Appeals for the Armed Forces is both a discretionary and non-discretionary court. It has discretion to grant or deny petitions for review from an accused. Article 67(a)(3), UCMJ, 10 U.S.C. § 867(a)(3). However, if the sentence extends to death or an issue is certified to the court by The Judge Advocate General, the court "shall review the record." Article 67(a)(1)(2), UCMJ.

In a case referred to it, the Court of Criminal Appeals may act only with respect to the findings and sentence as approved by the convening authority. It may affirm only such findings of guilty and the sentence or such part or amount of the sentence, **as it finds correct in law and fact** and determines, **on the basis of the entire record**, should be approved. **In considering the record, it may weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses.**

Article 66(c), UCMJ, 10 U.S.C. § 866(c) (emphasis added).

We are not limited to reviewing questions of law, but are required to determine the facts as well. How we evaluate those facts is largely up to us, although we must review the entire record and, when "considering the record," we are admonished to recognize "that the trial court saw and heard the witnesses." As a result, we have long exercised our fact-finding authority to determine the facts of a case without being bound by the facts found by the military judge. *United States v. Cole*, 31 M.J. 270, 272 (C.M.A.1990) (courts of criminal appeals may use their fact-finding powers to substitute their own judgment for that of the military judge). Similarly, we test for factual sufficiency of the evidence by asking whether or not we are ourselves convinced of the appellant's guilt beyond a reasonable doubt. *United States v. Turner*, 25 M.J. 324, 325 (C.M.A.1987).

On the other hand, Article 66(c) provides no specific guidance for when or how we exercise our authority to determine whether the findings and sentence are correct in law. Our test for legal sufficiency is the same as for other federal appellate courts—whether, when the evidence is viewed most favorably to the government, a reasonable fact-finder could have found the appellant guilty of all elements of the offense, beyond a reasonable doubt. *Id.* We have historically acted on legal errors as any other court of appeals by applying waiver, forfeiture, and plain error doctrines where and when appropriate to do so. *United States v. Calamita*, 48 M.J. 917 (A.F.Ct.Crim.App.1998); *United States v.*

*Agosto*, 43 M.J. 745 (A.F.Ct.Crim.App.1995); *United States v. Darby*, 27 M.J. 761 (A.F.C.M.R.1988); *United States v. Young*, 11 M.J. 634 (A.F.C.M.R.1981). However, unlike discretionary courts, we do not have the luxury of limiting our consideration to issues of our choosing. Rather, we must consider every error asserted on appeal.

Our use of these rules serves "to encourage all trial participants to seek a fair and accurate trial the first time around[.]" *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). It also comports to the language of Article 66(c) requiring that we affirm only those parts of the findings and sentence that we find to be "correct in law and fact and determine[ ], **on the basis of the entire record**, should be approved." Article 66(c), UCMJ (emphasis added). However, we are also cognizant of the fact that we cannot approve an otherwise factually sufficient guilty finding if legal errors unfairly impacted that finding. We believe it is here that the differences between the standard *Olano* plain error rule and the direction given us in *Powell* become significant.

### C. Article 59(a) and Plain Error

*Powell* teaches that an appellant who relies on the plain error doctrine before our Court must demonstrate that (1) There was error; (2) The error was plain, that is clear or obvious; and, (3) The error *materially prejudiced* a substantial right of the appellant. *See* Article 59(a), UCMJ; *Powell*, 49 M.J. at 464. The first two steps of this analysis are identical to the *Olano* test. The third step of the *Olano* test, however, requires only an "effect" on a substantial right, while in the military courts, the appellant must demonstrate that the error "materially prejudiced" some substantial right. We interpret this to mean that there must be some harm to the appellant. Thus, if there is error, that is plain, and affects a substantial right, we need not take corrective action unless there is "material prejudice" to that right, that is, the error was so significant as to influence the outcome of the trial. *Powell*, 49 M.J. at 465; *United States v. Fisher*, 21 M.J. 327, 328 (C.M.A.1986).

On its face, this is a more difficult standard to meet than that set forth in *Olano*. However, in *Johnson*, 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997) the Supreme Court added what appears to be a fourth step in the *Olano* plain error analysis. Specifically, the Court held that even if all three elements of the *Olano* test for plain error are met, an appellate court may only exercise its discretion to notice a forfeited error if the error "*seriously* affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Johnson*, 520 U.S. at 466–67, 117 S.Ct. 1544 (emphasis added). This fourth step does not change the definition of plain error; rather, it asserts under what circumstances an appellate court may take corrective action.

The "seriously affect the fairness" standard was first enunciated in *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) and was re-emphasized in *United States v. Young*, 470 U.S. 1, 16 n. 14, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), where the Supreme Court explained the requirement by saying:

> To do otherwise could well lead to having appellate courts indulge in the pointless exercise of reviewing "harmless plain errors"—a practice that is contrary to the draftsmen's intention behind Rule 52(b) . . . and one that the courts have studiously avoided. . . .

While Fed.R.Crim.P. 52(b), which says simply, "[p]lain error or defects affecting substantial rights may be noticed although not brought to the attention of the court," does not apply to the military, the *Young* logic does. Mil.R.Evid. 103(a) asserts that an error admitting or excluding evidence must materially prejudice a substantial right of a party, and there must have been either an objection or offer of proof made at trial. However, "[n]othing in this rule precludes taking notice of plain errors that materially prejudice substantial rights although they were not brought to the attention of the military judge." Mil.R.Evid. 103(d).

Mil.R.Evid. 103(d) is taken from Federal Rule of Evidence 103(d) with only one minor change, the substitution of the words "materially prejudice" for "affecting" substantial

rights. Drafter's Analysis, *Manual for Courts–Martial, United States (MCM)*, A22–3 (1995 ed.). The language of the Federal Rule, in turn, comes directly from Fed. R.Crim.P. 52(b). Notes of Advisory Committee on Proposed Rules, Fed.R.Evid. 103, Title 28, USCA. Thus, although Rule 52(b) does not directly apply to military courts-martial procedures, its import and purpose are encompassed by Mil.R.Evid. 103(d), which, along with Article 59(a), provides the same limitation on review of harmless error that is provided by the *Olano/Johnson* analysis. To put it simply, even if there is a clear or obvious error at trial, if that error does not materially prejudice a substantial right (i.e., seriously affect the fairness of the trial), this Court need not take corrective action.

■ As suggested above, Article 66(c) clearly requires our review of the entire record so that we can determine the factual sufficiency of that record. However, Article 66(c) does not require our *sua sponte* correction of every error that occurs at trial. Rather, that article requires only that we consider each error and approve the findings and sentence only after we are satisfied that they are legally and factually correct. To interpret it otherwise would relieve trial defense counsel of the responsibility of raising appropriate motions and objections at trial. This in turn would result in our not having a proper record on which to rely in making determinations of factual and legal sufficiency. As a result, the process would be unnecessarily slowed while we returned more and more cases for post-trial hearings or wholesale rehearings on findings or sentence. Despite some of our rhetoric in *United States v. Ruiz*, 50 M.J. 518 (A.F.Ct.Crim.App.1998), we do not believe that such a result is either tenable or what the court intended in *Powell*. We are strengthened in this view by our analysis of the progenitor of the *Powell* and *Fisher* decisions.

The Supreme Court's analysis in *Young* formed the basis for the holding in *Fisher* that plain error "must not only be both obvious and substantial, it must also have 'had an unfair prejudicial impact on the jury's deliberations.'" *Fisher*, 21 M.J. at 328 (citation omitted). In *Powell*, USCAAF made it clear

that the *Young/Fisher* standard still applies to the service courts of criminal appeals by saying, "Finally, the lower court's holding falls short of the *Fisher* requirement that plain error have an 'unfair prejudicial impact on the jury's deliberations.' " *Powell,* 49 M.J. at 465 (citations omitted). Moreover, the Supreme Court concluded in *Olano* that "a plain error affecting substantial rights does not, without more, satisfy the *Atkinson* standard...." *Olano,* 507 U.S. at 737, 113 S.Ct. 1770. Nor, do we believe, such error, without more, would meet the *Fisher* standard or require corrective action under Article 59(a).

### D. *United States v. Ruiz* Revisited

Some of our *dicta* in *Ruiz* suggested that *Powell* signaled the death of the doctrine of forfeiture in the Courts of Criminal Appeals. *Ruiz,* 50 M.J. at 524. Indeed, our ultimate holding may be read as setting forth a less rigorous standard for reversal than that required by Article 59(a). *Ruiz,* 50 M.J. at 525. However, a less demanding standard for finding plain error would remove from trial defense counsel the incentive to object at trial. Allowing counsel to remain silent at trial and raise an error for the first time on appeal "undermines 'our need to encourage all trial participants to seek a fair and accurate trial the first time around.' " *Fisher,* 21 M.J. at 328 (quoting *Frady,* 456 U.S. at 163, 102 S.Ct. 1584). The Court also quoted *Young,* 470 U.S. at 16, 105 S.Ct. 1038, saying that "without viewing the error in the context of the facts of the particular case, 'it is simply not possible for an appellate court to assess the seriousness of the claimed error.' " *Id.*

After applying *Ruiz* for a full year, the wisdom of *Fisher* and *Young* is quite clear. Without a proper record, an appellate court simply cannot fully understand or make informed conclusions on alleged errors. We are now convinced that our analysis of *Powell* was incorrect, at least in so far as we surmised that forfeiture is dead and implied that a less rigorous test for plain error was indicated. After taking a second look at *Powell,* we now conclude that rather than eviscerating this important doctrine, USCAAF was merely reminding the service courts that our

rule, as set forth in Article 59(a) and Mil. R.Evid. 103(d), is more demanding and makes establishing "plain error" more difficult than does the basic three-step analysis of *Olano.* At least one of our sister service courts has also read *Powell* to apply in this manner. *See United States v. Dawkins,* 51 M.J. 601, 603 (Army Ct.Crim.App.1999).

Thus, while we are required by Article 66(c) to review the entire record and "affirm only such findings of guilty and the sentence" as we find correct in both law and fact, nothing in that article or Article 59(a) requires us to ignore those Rules for Court-Martial and Rules of Evidence that require counsel to raise objections at trial. *E.g.,* R.C.M. 919(c) (failure to object to argument before instructions waives error); R.C.M. 920(f) (absent plain error, failure to object to findings instructions waives error); R.C.M. 1005(f) (absent plain error, failure to object to sentencing instruction before deliberation waives error); Mil.R.Evid. 103(a) (error may not be predicated on admission or exclusion of evidence unless an objection is raised at trial). Nor are we required to give appellants whose counsel fail to assert appropriate objections at trial a second opportunity to raise those objections unencumbered by the long standing doctrines of forfeiture and plain error. Article 59(a), UCMJ (findings and sentence may not be held incorrect unless error materially prejudices substantial rights); Mil.R.Evid. 103(d) (courts *may* recognize plain error that materially prejudices substantial rights).

In *Olano,* the Supreme Court explained that the burden of proof normally falls on the government to prove that an error at trial was not prejudicial to the appellant. However, when the allegation is based on plain error rather than error that was raised at trial, "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice." *Olano,* 507 U.S. at 734, 113 S.Ct. 1770. The Court went on to explain that this shifting of burdens was dictated by the two parts of Fed. R.Crim.P. 52: "While Rule 52(a) precludes error correction only if the error 'does *not* affect substantial rights,' Rule 52(b) authorizes no remedy unless the error *does* 'affect

substantial rights.' " *Id.* This explanation of the shifting burdens is interestingly similar to USCAAF's explanation of the limitations on our authority to approve or modify findings and sentences.

> [W]hile Courts of Criminal Appeals are not constrained from taking notice of otherwise forfeited errors, they are constrained by Article 59(a), because they may not reverse unless the error "materially prejudices the substantial rights of the accused." Articles 59(a) and 66(c) serve to bracket their authority. Article 59(a) constrains their authority to reverse; Article 66(c) constrains their authority to affirm.

*Powell,* 49 M.J. at 464.

▮▮ Therefore, to dispel any doubt or confusion that *Ruiz* may have engendered, the doctrine of forfeiture is alive and well in the Courts of Criminal Appeals and, if counsel fail to raise an objection at trial, we may reverse a finding or modify a sentence only if we find material prejudice to the appellant. To the extent that *Ruiz* indicates otherwise, it should not be followed. In order to aid us in making such determinations, we will use the teachings of *Olano* and place the burden of proof on the appellant to demonstrate that (1) There is error; (2) The error is "plain," that is clear or obvious; and, (3) The error *materially prejudices* a substantial right of the appellant—results in an unfair trial. *See United States v. Cardreon,* 52 M.J. 213 (1999). In placing the burden of proof on the appellant we are not unmindful of our statutory mandate to review the record in any event. We simply are requiring a standard similar to that applied when testing for legal sufficiency, whereby all inferences are drawn in favor of the government. *United States v. Turner,* 25 M.J. 324 (C.M.A.1987). We do not deem it unduly *burdensome* to require an appellant to meet this requirement, because the failure to object at trial precluded the government from presenting evidence and otherwise making an adequate record for review.

## III. EFFECT OF PLAIN ERROR ON APPELLANT'S ALLEGATIONS OF ERROR

As already noted, the appellant failed to object to either the military judge's instruction or the assistant trial counsel's argument at trial. Therefore, in order to prevail, he must show plain error, that is, error that is clear or obvious and results in an unfair trial. *Olano,* 507 U.S. at 732–34, 113 S.Ct. 1770; *Powell,* 49 M.J. at 464.

▮▮ During his unsworn statement, the appellant replied in the affirmative to his counsel's question: "And you also know that drug treatment programs could be commonly available [at the USDB]?" Later, at trial counsel's request, the military judge took judicial notice of Department of Defense (DoD) directives that provide that treatment for substance abuse is commonly available in military confinement facilities and require those facilities to make mental health care professionals available to confinees. The appellant did not object to this procedure at trial, and on appeal he offers no legal support for his contention that the military judge erred by instructing the members that he had taken such notice. Rather, the appellant complains that because he did not, in fact, receive such treatment, the instruction was in error. However, his own affidavit admits the existence of these programs within the USDB. Therefore, the military judge neither erred by taking judicial notice of the requirements set forth in the directives, nor by instructing on those points. The information he provided the members was accurate and did not mislead them.

▮▮ Once the appellant himself raised the possibility that drug treatment would be available to him, assistant trial counsel was free to include that information in her sentencing argument. We find the trial counsel's very brief statement was fair comment on the evidence which had been properly admitted and the accused's unsworn statement. *United States v. Doctor,* 21 C.M.R. 252, 1956 WL 4578 (C.M.A.1956); *United States v. Linson,* 9 M.J. 520 (A.F.C.M.R. 1980).

Moreover, trial defense counsel's sentencing argument centered around the fact that the appellant had been actively participating in three separate rehabilitation programs and receiving psychiatric counseling and treatment from two psychiatrists during the 15 months leading up to his trial. The clear tenor of that argument was that confinement would cut him off from these programs as well as from the support of his wife and family. Defense counsel clearly was asking the members to allow the appellant to continue the in-depth rehabilitation he had undertaken rather than limiting him to the single program available at the USDB. Based on these facts and arguments by defense counsel, we find that not only has the appellant failed to demonstrate the existence of plain error, he has failed to show any error at all.

## IV. INSTRUCTING ON LOSS OF RETIREMENT BENEFITS

At trial, defense counsel requested a sentencing instruction concerning the effect of a dismissal upon the appellant's potential retirement benefits. The military judge, however, declined to give the requested instruction.

 We review a military judge's decision to give or deny an instruction on the consequences of a particular sentence for an abuse of discretion. *United States v. Perry,* 48 M.J. 197, 199 (1998); *United States v. Greaves,* 46 M.J. 133, 139 (1997). We will not reverse the military judge's decision merely because we disagree with him. Rather, we must find that the military judge's decision was arbitrary, fanciful, clearly unreasonable, or clearly erroneous. *United States v. Travers,* 25 M.J. 61, 62 (C.M.A. 1987).

 The loss of retirement benefits for one who is eligible to retire at the time of trial is not irrelevant or collateral, but a direct and proximate consequence of a sentence that includes a punitive discharge. *United States v. Stargell,* 49 M.J. 92, 93 (1998); *Griffin,* 25 M.J. at 424. Therefore, it is appropriate for court-members to consider those consequences during sentence deliberations. *United States v. Sumrall,* 45 M.J. 207, 209 (1996). One need not be immediately eligible to retire in order to present evidence or seek an instruction concerning the loss of potential retirement that would result from imposition of a punitive discharge. However, one must be "knocking on the door" or "perilously close" to retirement to warrant such an instruction. *Greaves,* 46 M.J. at 139 (no error to instruct on effect of punitive discharge on retirement benefits for accused with 19 years, 10 months of service); *United States v. Becker,* 46 M.J. 141, 143 (1997) (error to exclude evidence of retirement benefits when accused was only 3–1/2 months from retirement eligibility without need to re-enlist).

 Whether or not evidence of the loss of potential retirement benefits was relevant and should have been admitted, "depends upon the facts and circumstances of the individual accused's case." *Becker,* 46 M.J. at 143. The appellant here had completed 15 years, 6 months active service at the time of trial. Therefore, the question we must answer is whether one can be "knocking on the door" of retirement while still 4–1/2 years away from that door. The appellant recognizes that in *United States v. Henderson,* 29 M.J. 221 (C.M.A.1989), our superior court held that an instruction on retirement benefits was not required for an enlisted member who was 3 years away from retirement eligibility and would have to re-enlist in order to reach the magic 20 year point. This appears to answer the question adversely to the appellant. However, the appellant argues that there is a question concerning the application of these rules to officers who do not have to re-enlist in order to continue their service.

The fact that *Henderson* had to re-enlist in order to reach 20 years of service was but one factor for the court to consider. The most significant factor in *Henderson* remains the length of time between his trial and his potential retirement eligibility. That is also the most significant factor in the appellant's case. We find that one who is 4–1/2 years away from retirement eligibility is neither "knocking on the door" nor "perilously close" to retirement.

Finally, we note that unlike the court in *Greaves,* the court members here had no questions about the effect of a dismissal on the appellant's retirement eligibility; and, unlike trial defense counsel in *Henderson,* counsel here did not seek to argue this point during his sentencing argument. Under the circumstances of this case, we conclude that the military judge did not abuse his discretion when he refused to instruct as requested.

## V. CONCLUSION

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the accused occurred. Accordingly, the findings and sentence are

AFFIRMED.

Senior Judge YOUNG and Judge WILCOX concur.