UNITED STATES, Appellee

v.

Gregory A. BOYD, Captain
U.S. Air Force, Appellant

No. 00-0446

Crim. App. No. 33483

_____

United States Court of Appeals for the Armed Forces

Argued November 14, 2000

Decided July 10, 2001

GIERKE, J., delivered the opinion of the Court, in which
CRAWFORD, C.J., and SULLIVAN, EFFRON, and BAKER, JJ., joined.
SULLIVAN, J., filed a concurring opinion.

Counsel

For Appellant:  Captain Patrick J. Dolan (argued); Lieutenant
   Colonel Timothy W. Murphy, Lieutenant Colonel James R. Wise,
   and Captain Bryan A. Bonner (on brief); Colonel Jeanne M.
   Rueth.

For Appellee:  Lieutenant Colonel Michael E. Savage (argued);
   Colonel Anthony P. Dattilo, Lieutenant Colonel Ronald A.
   Rodgers, and Captain James C. Fraser (on brief); Lieutenant
   Colonel William B. Smith.

Military Judge:  Jack L. Anderson


**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE PUBLICATION.**

Judge GIERKE delivered the opinion of the Court.

A general court-martial composed of officer members convicted appellant, pursuant to his pleas, of destroying government property, wrongful use of controlled substances (2 specifications), larceny of military property (3 specifications), and conduct unbecoming an officer by wrongfully injecting himself with a controlled substance while on duty and in uniform, in violation of Articles 108, 112a, 121, and 133, Uniform Code of Military Justice, 10 USC §§ 908, 912a, 921, and 933, respectively.  The adjudged and approved sentence provides for a dismissal, confinement for 90 days, and forfeiture of $215.00 pay per month for 3 months.  The Court of Criminal Appeals affirmed the findings and sentence.  52 MJ 758.

This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED BY NOT INSTRUCTING THE
> MEMBERS ON THE LOSS OF RETIREMENT BENEFITS THAT COULD RESULT
> FROM A PUNITIVE DISCHARGE WHEN TRIAL DEFENSE COUNSEL
> REQUESTED SUCH AN INSTRUCTION.

For the reasons set out below, we affirm.

### Factual Background

The court below summarized the facts underlying appellant's conviction as follows:

> The appellant was a nurse in the Intensive Care Unit
> (ICU) at the Eglin Air Force Base Hospital.  Between 1
> July 1997 and 3 August 1997, he took 111 tubexes
> (vials) of Meperidine, 73 vials of Morphine, and one
> vial of Versed, for his own use.  All three of these
> drugs are controlled substances.  He used the Morphine
> and Meperidine to alleviate withdrawal symptoms caused
> by his drug addiction.  In addition, the appellant
> withdrew portions of the contents of 22 vials of
> Meperidine and 3 bottles of Morphine.  He replaced the
> drugs with a sterile saline solution, thereby diluting
> the drugs, then returned the vials and bottles to the
> drug storage unit.  On 3 August 1997, while at work in

> the ICU and in uniform, the appellant injected himself
> with Versed.

Id. at 760-61.

Prior to entry of pleas, the defense requested the military judge to order a sanity board to determine whether appellant was competent to stand trial. During the hearing on the defense request, the prosecution presented evidence that appellant had been evaluated by a physical evaluation board, and the board had recommended temporary retirement for disability, based on various mental disorders. The military judge ordered a sanity board, which found that appellant was mentally competent to stand trial.

During voir dire, trial counsel asked the members if they "would automatically rule a dismissal out as part of a sentence simply because of the impact it might have on the accused's ability to obtain benefits." All members responded in the negative. Defense counsel asked no questions about the impact of a dismissal on appellant's retirement benefits. After challenges, the panel consisted of two colonels, two lieutenant colonels, two majors, and one captain.

The prosecution case on sentencing focused on appellant's breach of trust, stealing drugs entrusted to him, and diluting drugs that could have been administered to patients under his care. The parties agreed there was no evidence that any patient had been administered a diluted drug.

The defense sentencing case focused on appellant's long and honorable service, his many commendations, his efforts to overcome his addiction and retain his nursing license, and the economic impact of terminating his military service. While

questioning appellant's wife, the defense made reference to appellant's 15½ years of service.  His service also was reflected in documents presented by the prosecution.  However, neither defense counsel nor trial counsel presented any evidence to the members regarding the physical evaluation board's recommendation for temporary disability retirement.

Appellant's wife testified that appellant was addicted to morphine, and he was remorseful, ashamed, and embarrassed.  She testified that her earning potential was limited, and the family would be financially devastated if appellant left the Air Force.  She testified that they had sold the family car and their boat, and they would be unable to keep up the payments on the family home if appellant's military career was terminated.

Appellant made both oral and written unsworn statements.  He described his drug addiction and withdrawal symptoms.  He described his participation in the Florida Intervention Project for Nurses, which offers licensed nurses an opportunity for recovery from drug addiction, as well as an opportunity to retain their nursing licenses.  He expressed remorse and asked for an opportunity to repay his family and friends for their support and to be "a good father, husband, son, and a member of the community."

During the hearing on sentencing instructions, defense counsel requested "an instruction on retirement benefits."  Defense counsel used the phrase "perilously close to retirement," quoting from this Court's decision in United States v. Greaves, 46 MJ 133, 139 (1997), and argued that "with 15½ years, if he's not dismissed and he can stay in service, he would likely reach

4

retirement." The military judge opined that <u>Greaves</u> was authority for not giving the requested instruction, and he declined to give it. The references to <u>Greaves</u> indicate that both defense counsel and the military judge were talking about retirement for length of service, not disability retirement. Defense counsel did not request the military judge to instruct the members on the impact of a dismissal on appellant's opportunity to be placed on the temporary disabled retired list.

During sentencing arguments, defense counsel argued that "society will forgive someone who uses drugs," but will not forgive a punitive discharge. He argued that "a punitive discharge carries with it an ineradicable stigma . . . that is widely recognized by society." Defense counsel argued that a dismissal would cause appellant to "be branded on his forehead for life." Finally, defense counsel argued that a combination of punitive separation and confinement would leave appellant without "a leg to stand on," and no chance for a future. Defense counsel asked the court members:

> [I]f you are so inclined to send him -- to give him a dismissal, then please -- please don't pull him out of his recovery program, and from his wife, and from his family, too. Please do not send him to confinement, not just because of what it will do to him, but for a whole host of reasons . . . .

The military judge instructed the members as follows regarding the impact of a dismissal:

> A dismissal is a punitive discharge. Our society commonly recognizes the ineradicable stigma of a punitive discharge, and a punitive discharge affects the accused's future with regard to legal rights, economic opportunities, and social acceptability and will deny the accused other advantages which are enjoyed by one whose discharge indicates that he has served honorably. The issue before you is not whether

the accused should remain a member of the Air Force, but whether he should be punitively separated from the service.

A sentence to a dismissal of an officer is the general equivalent of a dishonorable discharge for an airman. A dismissal should be reserved for those who, in the opinion of the court, should be separated under conditions of dishonor after conviction of serious offenses of a civil or military nature warranting such severe punishment. A person dismissed from the armed forces is denied substantially all veteran's benefits. You are not required to adjudge a discharge, but if you do, you may only adjudge a dismissal.

After the military judge completed his instructions, the President of the court-martial asked:

If a dismissal is the only discharge option that is afforded us, and a punitive--you've already explained the effects of a punitive dismissal. If we were to determine that was not appropriate, what would be the impact on Captain Boyd's continued service? Would he continue to serve in the Air Force, I guess, is the question?

The military judge conferred with appellant and counsel for both sides, out of the presence of the members, to determine how to answer the question. With the express agreement of both sides, the military judge gave the following additional instruction:

You have a duty to determine an appropriate punishment for the accused in this case. That may include a decision on whether to sentence the accused to be discharged punitively from the service. If you determine a punitive discharge is warranted in this case, then the only punitive discharge this court may adjudge is a dismissal. You are advised, however, that a decision not to include a dismissal in your sentence does not mean the accused would necessarily be retained in the service. Such a decision would only reflect your judgment that he does not deserve a punitive discharge and the stigma that goes with it. Your decision regarding a punitive discharge is but one part of the process of determining an appropriate punishment, and it must not be viewed merely as a decision to retain or separate the accused from the service.

The members had no further questions.  After deliberating for slightly over 2 hours, the members imposed a sentence that included a dismissal.

## Discussion

Appellant now asserts that the military judge should have instructed the members on the impact of a dismissal on his future retirement benefits, including both retirement for length of service and temporary disability retirement.  The Government argues that an instruction on retirement for length of service was not required because appellant was not "perilously close" to retirement.  The Government also argues that appellant waived any issue regarding an instruction on disability retirement because he did not request such an instruction.

We review a military judge's decision whether to instruct on a specific collateral consequence of a sentence for abuse of discretion.  United States v. Perry, 48 MJ 197, 199 (1998).

## Retirement for Length of Service

When an accused is eligible for retirement, "[t]he potential loss of retirement benefits [is] a proper matter for consideration by factfinders[.]"  United States v. Sumrall, 45 MJ 207, 209 (1996); see also United States v. Griffin, 25 MJ 423, 424-25 (CMA 1988) (no error for the military judge to instruct, pursuant to the request of an accused who was eligible for and had applied for retirement, on the impact of a sentence on the accused's retirement benefits).  In United States v. Becker, 46 MJ 141, 144 (1997), we held that it was error for the military judge to exclude evidence of the impact of a punitive discharge on retirement benefits, because the accused was "literally

7

knocking at retirement's door at the time of his court-martial," having served for 19 years and 8½ months.  See also Greaves, supra (military judge erred by not answering a court member's question about the impact of a punitive discharge on retirement benefits, where accused was "perilously close to retirement," with 19 years and 10 months of service).

On the other hand, in United States v. Henderson, 29 MJ 221, 233 (CMA 1989), this Court held that a military judge did not abuse his discretion by refusing to instruct on the impact of a punitive discharge on retirement benefits, where the accused was 3 years from retirement and would have been required to reenlist to be retirement eligible.  Our Court took cognizance of Henderson in Greaves and Becker, and we distinguished it in both cases but did not expressly overrule it.  46 MJ at 138, 143.  The question whether Greaves and Becker overruled or modified Henderson is still open.

Most recently, in United States v. Luster, 55 MJ 67 (2001), we held that a military judge erred when she excluded evidence of the estimated retired pay of an accused with 18 years and 3 months of service.  We noted that the probability of retirement was not remote, and the expected financial loss was substantial. We also noted that, when the defense puts retirement benefits in issue, the prosecution may present evidence to rebut the likelihood that the accused will reach retirement eligibility. Id. at 71.

Consistent with our holdings in Sumrall, Greaves, Becker, and Luster, we will require military judges in all cases tried after the date of this opinion to instruct on the impact of a

punitive discharge on retirement benefits, if there is an evidentiary predicate for the instruction and a party requests it.* We expect that military judges will be liberal in granting requests for such an instruction. They may deny a request for such an instruction only in cases where there is no evidentiary predicate for it or the possibility of retirement is so remote as to make it irrelevant to determining an appropriate sentence. The instruction should be appropriately tailored to the facts of the case with the assistance of counsel, and it should include language substantially as follows:

> In addition, a punitive discharge terminates the accused's military status and the benefits that flow from that status, including the possibility of becoming a military retiree and receiving retired pay and benefits.

Military Judges' Benchbook at 97 (Department of the Army Pamphlet 27-9 (April 1, 2001)).

We need not decide, however, whether this appellant's 15½ years of service was a sufficient evidentiary predicate to entitle him to an instruction on retirement benefits, because we are satisfied that even if there was error in denying the request for such an instruction, it was harmless. The evidentiary predicate for an instruction on retirement benefits was minimal. Appellant tendered no evidence pertaining to the projected value of his retirement for service. Appellant did not mention his hopes for retirement in his two unsworn statements. Neither appellant nor his defense counsel asked the court members to save

---

* Of course, an instruction on potential retirement benefits may also entitle the prosecution to an instruction on the legal and factual obstacles to retirement faced by a particular accused.

appellant's retirement.  The court members asked no questions about retirement benefits.  Defense counsel made no mention of retirement benefits until the sentencing hearing was completed and the parties were reviewing the military judge's proposed instructions.

The focus of the defense sentencing case was on preserving appellant's ability to continue with his drug rehabilitation program, retaining his ability to practice his profession, and restoring his ability to be a worthy member of the community. The focus was not on preserving the possibility of military retirement in 5 years.  The defense emphasized the present, not the future.  Accordingly, we conclude that any failure to instruct the members about the impact of a dismissal on future retirement benefits did not have a substantial influence on the sentence.  Kotteakos v. United States, 328 U.S. 750, 765 (1946).

Temporary Disability Retirement

In United States v. Stevenson, 53 MJ 257, 258-59 (2000), this Court explained the nature of temporary disability retirement as follows:

> If a servicemember while on active duty becomes disabled, the Service Secretary may retire the member with pay, subject to detailed statutory and regulatory procedures.  These procedures provide two basic types of disability retirement--permanent and temporary. When there is a determination that a disability is "permanent . . . and stable," the Service Secretary may retire the member with pay.  10 USC § 1201.
> If, however, the disability "may be of a permanent nature," but the circumstances do not permit a final determination that the condition is, in fact, "permanent . . . and stable," the Secretary is required to place the member on the "temporary disability retired list [TDRL], with retired pay."  10 USC § 1202.

> While on the TDRL, a member is required to submit to periodic physical examinations to "determine whether

10

there has been a change in the disability for which he was temporarily retired." Failure to submit to such a periodic examination may lead to termination of retired pay. 10 USC § 1210(a).

When a periodic examination leads to a determination that the member is "physically fit" to perform his or her duties, there are a number of options. The member may be returned to active duty with his or her consent, retired if otherwise eligible for retirement, discharged, or transferred to the inactive reserves. If the member does not consent to a proposed return to active duty, "his status on the temporary disability retired list and his disability retired pay shall be terminated as soon as practicable and the member shall be discharged." 10 USC § 1211(c).

If a member remains on the TDRL for 5 years, the Secretary is required to make a final determination. If there is a determination that the disability "still exists," it is considered at that point to be "permanent . . . and stable," and the member is retired. 10 USC § 1210. If the member is determined to be fit for duty, the service has the same options as when such a determination is the result of a periodic examination; return to active duty with consent, retirement if otherwise eligible, discharge, or transfer to the inactive reserves.

Because the defense did not request an instruction on the impact of a punitive discharge on temporary disability retirement, we will grant relief only if the military judge's failure to instruct sua sponte was plain error. See United States v. Grier, 53 MJ 30, 34 (2000), citing United States v. Cooper, 51 MJ 247, 252 (1999), and United States v. Powell, 49 MJ 460, 463 (1998).

In this case, there was no factual predicate for an instruction on temporary disability retirement. For reasons not disclosed on the record, the defense did not present any evidence to the members reflecting appellant's eligibility for disability retirement. The only evidence in the record was presented by the prosecution during a hearing before the military judge on the

question whether appellant was competent to stand trial.  That evidence was not presented to the members by either side.  We hold that there was no error at all, much less plain error.

## Decision

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

<u>United States v. Boyd</u>, 00-0446/AF

    SULLIVAN, Judge (concurring):

    I agree.  In my view, this opinion accurately reflects the present state of the law as stated in <u>United States v. Luster</u>, 55 MJ 67 (2001).  The 5-year march from <u>United States v. Sumrall</u>, 45 MJ 207 (1996), to <u>United States v. Luster</u>, <u>supra</u>, has been a steady and proper advancement of the law to insure fair treatment of the servicemember in the sentencing process.