# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Master Sergeant MIGUEL A. ARROYO**
**United States Army, Appellant**

ARMY 20140746

Headquarters, Fort Bliss
Michael J. Hargis, Military Judge
Colonel Karen H. Carlisle, Staff Judge Advocate

For Appellant: Captain Payum Doroodian, JA; James S. Trieschmann, Jr., Esquire (on brief).

For Appellee: Colonel Mark H. Sydenham, JA; Major John K. Choike, JA (on brief).

15 April 2016

---------------------------------
SUMMARY DISPOSITION
---------------------------------

WOLFE, Judge:

A military judge sitting as a general court-martial convicted appellant, in accordance with his pleas, of one specification each of failure to obey a general regulation, maltreatment of a subordinate, and assault consummated by a battery, in violation of Articles 92, 93, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 893, and 928 (2012) [hereinafter UCMJ]. The court-martial sentenced appellant to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. The convening authority, in taking action consistent with the terms of a pretrial agreement, approved a bad-conduct discharge, confinement for six months, and a reduction to the grade of E-4.[1] The convening authority deferred the

---

[1] Notwithstanding the approved sentence, by operation of law appellant was reduced to the grade of Private E-1. *See* UCMJ art. 58a(a)(1); Army Reg. 27-10, Legal Services: Military Justice, para. 5-29.e.(2)(a) (3 Oct. 2011). The military judge, after announcing sentence and examining the offer to plead guilty, verified that all parties understood the implications of the automatic reduction.

adjudged reduction until action on the case and further waived automatic forfeitures for the benefit of appellant's spouse for a period of six months from the effective date of the sentence.

The case is before us for review pursuant to Article 66, UCMJ. Appellant assigned two errors, both of which merit discussion but neither of which warrants relief. Appellant personally raised two issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), neither of which merits relief.[2]

## BACKGROUND

Appellant was convicted of misconduct involving a female Specialist and a female Corporal who were both assigned to the company of which he was the First Sergeant. Appellant pleaded guilty to assault consummated by battery on divers occasions for kissing and pressing himself against Specialist ML without her consent, as well as maltreatment by making sexually offensive comments to her.

Appellant also pleaded guilty to violating Army Regulation 600-20 for having an inappropriate relationship with Corporal (CPL) MG. Army Reg. 600-20, Personnel-General: Army Command Policy [hereinafter AR 600-20], para. 4-14.b (18 Mar. 2008; Rapid Action Revision 20 Sept. 2012).[3] Specifically, appellant

---

[2] In his first *Grostefon* issue, appellant asserts the trial counsel's sentencing argument was improper in that it predicted, and then presumptively rebutted, the argument defense counsel would make during his sentencing argument. Assuming error, the failure to object forfeited the issue. *See* Rule for Courts-Martial [hereinafter R.C.M.] 1001(g). In his second *Grostefon* issue, appellant asserts that his Noncommissioned Officer Evaluation Report (NCOER) was inappropriately influenced by the pending investigation and comments from the senior rater to the rater that "[y]ou need not put a lot of effort into making him walk on water as my [Senior Rater] bullets will highlight the indiscretions that we have been made aware of during the recent investigation." None of appellant's NCOERs or the other supporting documents were introduced at trial or subjected to adversarial testing. We find we lack jurisdiction to consider appellant's administrative evaluation. *See Clinton v. Goldsmith*, 526 U.S. 529 (1999). Our lack of jurisdiction on this issue does not, of course, preclude appellant from seeking administrative avenues of redress to contest a disputed NCOER. *See, e.g.,* Army Reg. 15-185, Boards, Commissions, and Committees: Army Board for Correction of Military Records (31 Mar. 2006).

[3] AR 600-20 was subsequently revised, but the 20 September 2012 version was applicable at the time of appellant's misconduct with CPL MG.

2

admitted to slapping CPL MG's buttocks and flirting with her "in the workplace." Additionally, appellant admitted in the stipulation of fact accompanying his pleas that, on at least one occasion in his office, he kissed CPL MG and digitally penetrated her vagina.

## DISCUSSION

### A. *Prohibited Relationships*

In his first assignment of error, appellant claims the military judge abused his discretion by accepting his plea to violating a general regulation under Article 92(1), UCMJ. Specifically, appellant claims the military judge elicited insufficient facts that appellant's unit was *aware* of his inappropriate relationship with CPL MG. Appellant argues that "implicit" in the regulation's prohibition on relationships that *appear* to compromise supervisory authority "is the requirement [in AR 600-20] of a third party's knowledge or the unit's knowledge of a relationship."[4] We disagree.

We review a military judge's decision to accept a guilty plea for an abuse of discretion and questions of law arising from the guilty plea de novo. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). In so doing, we apply the substantial basis test, looking at whether there is something in the record of trial, with regard to the factual basis or the law, that would raise a substantial question regarding appellant's guilty plea. *Id.*

---

[4] AR 600-20, para 4-14.b prohibits relationships between soldiers of different grades if they:

> (1) Compromise, or appear to compromise, the integrity of supervisory authority or the chain of command.
>
> (2) Cause actual or perceived partiality or unfairness.
>
> (3) Involve, or appear to involve, the improper use of grade or position for personal gain.
>
> (4) Are, or are perceived to be, exploitative or coercive in nature.
>
> (5) Create an actual or clearly predictable adverse impact on discipline, authority, morale, or the ability of the command to accomplish its mission

Under appellant's reading, the regulation's prohibition on the "appearance" of impropriety applies to a relationship only if and when others become aware of it. Or, using appellant's logic, such a relationship is illicit only if one is caught.

We do not read the regulation the same way as appellant does. At least one of appellant's subordinates was clearly aware of the relationship—CPL MG. Appellant does not dispute that CPL MG was aware that he flirted with her, slapped her behind, and inserted his finger into her vagina after—in appellant's words—she "made herself available" to him. We have no doubt that appellant's supervisory authority over CPL MG was compromised. A sexual relationship would make it difficult for appellant to properly discipline, counsel, and mentor CPL MG. Similarly, it is difficult to imagine that CPL MG could ever view appellant as strictly her First Sergeant. That is, even if nobody else in the unit became aware of the sexual relationship appellant was having with a junior NCO, appellant's authority as to that NCO was itself compromised. Finally, we note the stipulation of fact provided that appellant flirted with and slapped CPL MG on the buttocks "in the workplace." Appellant cites no case supporting his position that some "third party" must become aware of the relationship. We find such a reading to be in conflict with the regulation's plain language and purpose.

Accordingly, we find no substantial basis in law or fact to question the providency of appellant's plea.

*B. Sentence Appropriateness*

In his second assignment of error, appellant asks this court to find that the bad-conduct discharge included as part of his sentence is "inappropriate." More specifically, appellant claims the loss of eligibility for retirement pay—a collateral consequence of the discharge—causes a punitive impact that is disproportionate to his offenses.

The President has explained that a bad-conduct discharge is "less severe than a dishonorable discharge and is designed as punishment for bad-conduct rather than as a punishment for serious offenses of either a civilian or military nature." R.C.M. 1003(b)(8)(C).

An accused's retirement eligibility is a proper consideration by a military judge in a judge-alone trial when determining an appropriate sentence. *See United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). We therefore give such concerns appropriate weight during appellate review. We do not, however, read *Boyd* to *require* that a senior member of the Armed Forces face less punishment than would a soldier who engages in similar misconduct but who is not close to retirement. All other things being equal, when a senior member of the Army commits misconduct, the breach of trust, effect on discipline and the mission, and the need for general

deterrence may often be greater than when the same conduct is committed by someone less senior. An accused's time in the service—whether the accused is a brand new recruit or a senior leader with decades of experience—may be aggravating, mitigating, or both. Accordingly, whether a sentence is appropriate is a case specific question. Here, appellant's misconduct, which involved two different junior enlisted women, was sufficiently severe to make a bad-conduct discharge appropriate.[5]

**CONCLUSION**

The findings of guilty and sentence are AFFIMED.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

JOHN P. TAITT
Chief Deputy Clerk of Court

---

[5] Appellant draws our attention to the courts-martial of four senior officers who committed similar misconduct as appellant, but received sentences that did not include a dismissal. We do not find the cases to be "closely related" to appellant's case. *See United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010). We note that courts-martial issue a single sentence for all offenses, making case-to-case comparisons difficult except in closely related cases. We further note that while our review for sentence appropriateness includes "considerations of uniformity and evenhandedness of sentencing decisions," a review for sentence appropriateness is not omnidirectional. *United States v. Sothen*, 54 M.J. 294, 296 (C.A.A.F. 2001). We may take action on a sentence that is inappropriately severe. *See* UCMJ art. 66 (we may affirm only so much of the sentence as we find correct in law and fact, and, on the basis of the entire record, is appropriate); *see also* UCMJ art. 63 (in cases where a rehearing on sentence is ordered, prohibiting a sentence at rehearing in excess of that which was adjudged at the original trial).