*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

───────────────

### UNITED STATES
Appellant

**v.**

### Chase J. EASTERLY, Senior Airman
United States Air Force, Appellee

**No. 19-0398**

Crim. App. No. 39310

December 4, 2019, Argued—Decided February 4, 2020

Military Judge: Charles E. Wiedie Jr.

For Appellant: *Major Anne M. Delmare* (argued); *Colonel Julie L. Pitvorec*, *Lieutenant Colonel Brian C. Mason*, *Major Michael T. Bunnell*, and *Mary Ellen Payne*, Esq. (on brief).

For Appellee: *Captain David A. Schiavone* (argued); *Major Mark J. Schwartz*.

Judge RYAN delivered the opinion of the Court, in which Chief Judge STUCKY, and Judges OHLSON, SPARKS, and MAGGS, joined.

───────────────

Judge RYAN delivered the opinion of the Court.

A general court-martial convicted Appellee, contrary to his pleas, of one specification of attempted premeditated murder in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880 (2012). The members sentenced Appellee to a dishonorable discharge, confinement for seven years, forfeiture of all pay and allowances, and reduction to E-1. The convening authority approved the adjudged sentence.

As relevant here, the United States Air Force Court of Criminal Appeals (CCA) specified the issue "whether the military judge committed plain error by failing to instruct sua sponte on the impact of a punitive discharge on permanent retirement for physical disability." *United States v. Easterly*, 2019 CCA LEXIS 175, at *2, 2019 WL 1616526, at *1 (A.F. Ct. Crim. App. Apr. 12, 2019) (unpublished). A majority found the military judge plainly erred because a Formal Physical

Evaluation Board (FPEB) report recommending Appellee's disability retirement set an evidentiary predicate for the instruction; the FPEB report, Appellee's potential retirement, and his disability rating were discussed at several points throughout the trial; and the failure to instruct affected Appellee's substantial right "to have the court-martial panel members consider all of the information they were allowed to consider before they adjudged his sentence." 2019 CCA LEXIS 175, at *48–55, 2019 WL 1616526, at *17–19. The CCA affirmed the findings but set aside the sentence and authorized a rehearing on the sentence. 2019 CCA LEXIS 175, at *57, 2019 WL 1616526, at *19.

The Judge Advocate General of the Air Force then certified the following issue pursuant to Article 67(a)(2), UCMJ, 10 U.S.C. § 867(a)(2) (2012):

> Whether the Air Force Court of Criminal Appeals erred in finding that the military judge committed plain and prejudicial error by failing to instruct the panel sua sponte regarding the impact of a punitive discharge on Appellee's potential permanent disability retirement, where Appellee did not request such an instruction.

We hold that there was no error here, let alone plain error. The test for when a military judge must instruct on the impact of a punitive discharge on retirement benefits is simple: There must be (1) an evidentiary predicate and (2) a request for the instruction. *United States v. Boyd*, 55 M.J. 217, 221 (C.A.A.F. 2001). Here, we need not decide whether the facts constitute an evidentiary predicate as no request was made, and the military judge thus had no duty to give the instruction. We thus answer the certified question in the affirmative and set aside the CCA's decision as to the sentence.

## I. BACKGROUND

Appellee met a woman through an online dating service. Shortly after a third date that ended badly, the details of which are discussed at *Easterly*, 2019 CCA LEXIS 175, at *4–7, 2019 WL 1616526, at *2, Appellee went to her apartment with every intent to "commit the perfect murder." He brought a "kill bag" containing a knife, bleach, a lighter, lighter fluid, gloves, trash bags, extra clothes, and a painter's mask. Appellee later described in great detail how he would have used the

items in the bag to harm his victim and cover up the evidence. He outlined the actions he took to avoid detection, explaining that "if [he] did actually go through with the act . . . that actually hurt [the woman], [he] wouldn't want the cops to know who [he] was."

When Appellee arrived at the woman's door, he knocked once, but the woman did not respond. After waiting several minutes, he knocked again, and again no one answered. Fortunately for the intended victim, he then left because he assumed she was not home.

Afterwards, Appellee visited the psychologist treating him for schizophrenia and disclosed what happened. Two events flowed from this disclosure.

First, an FPEB recommended, based on his diagnosis of schizophrenia, "Permanent Retirement with a disability rating of 100% [in accordance with] Department of Defense guidance for applying the Veterans Administration Schedule for Rating Disabilities." This potential permanent disability retirement had not yet been approved by the Secretary of the Air Force at the time of trial. *See* 10 U.S.C. § 1201 (2012) (Service Secretary makes final retirement determination).

Second, an Air Force Office of Special Investigations (AFOSI) investigation ensued, culminating in Appellee's statement to AFOSI and the referral, inter alia, of a charge and specification of attempted premeditated murder to a general-court martial.

The Government introduced the FPEB recommendation at trial, and both parties referred to Appellee's disability rating multiple times throughout their findings arguments.[1]

The Government argued at sentencing for a dishonorable discharge, focusing on the seriousness of the offense and emphasizing that the victim was a civilian, that Appellee went to her home, that Appellee gained the victim's trust partially

---

[1] During findings, the Government used the FPEB recommendation to establish motive for communicating a threat to kill any doctor who changed his diagnosis, an Article 134, UCMJ, 10 U.S.C. § 934, charge of which Appellee was acquitted. The defense referenced Appellee's disability rating to, inter alia, demonstrate lack of mental responsibility.

through his military connection, and that while "[t]here was no bloodshed, no crime scene, . . . he still took away that sense of trust, that sense of safety, her energy."

Defense counsel argued the sentence should account for Appellee's need for medication and treatment, and that a dishonorable discharge "strips him of all his benefits. It strips him of all his Veteran[s] Affair[s] benefits." Appellee's written unsworn statement also noted his need for continued medication through his Veterans Affairs benefits and that a punitive discharge would remove those benefits.

The military judge instructed the members that a punitive discharge "deprives one of substantially all benefits administered by the Department of Veterans Affairs and the Air Force." He later instructed that "[t]he consequences that flow from a federal conviction, other than the punishment, if any you impose, are collateral consequences of the conviction. The collateral consequences stemming from a federal conviction should not be part of your deliberations in arriving at a sentence."**2**

Neither party requested an instruction on the impact of a punitive discharge on Appellee's potential permanent disability retirement. The military judge did not ask the parties if they wanted such an instruction and did not give one sua sponte. No member asked about Appellee's retirement.

## II. DISCUSSION

"Failure to object to . . . omission of an instruction [on sentencing] . . . constitutes waiver of the objection in the absence of plain error."**3** Rule for Courts-Martial (R.C.M.) 1005(f)

---

**2** This Court has long recognized that the impact of a punitive discharge on retirement benefits where a member is "perilously close to retirement," *United States v. Greaves*, 46 M.J. 133, 139 (C.A.A.F. 1997), is not collateral, but rather "a direct and proximate consequence of the sentence." *United States v. Griffin*, 25 M.J. 423, 424 (C.M.A. 1988).

**3** Despite the rule using the word "waiver," this Court has interpreted the near identical language in R.C.M. 920(f) (findings instructions) that simultaneously discusses waiver and plain error as referring to forfeiture, not waiver. *See, e.g.*, *United States v. Davis*, 76 M.J. 224, 227 n.1 (C.A.A.F. 2017); *United States v. Ahern*, 76

(2016). Plain error requires showing: (1) error; (2) the error was clear or obvious; (3) the error prejudiced the accused's substantial rights. *United States v. Grier*, 53 M.J. 30, 34 (C.A.A.F. 2000). Where, as here, the military judge committed no error, the plain error analysis ends.

In *Boyd*, 55 M.J. at 221, this Court stated plainly that "we will require military judges in all cases tried after the date of this opinion to instruct on the impact of a punitive discharge on retirement benefits, if [(1)] there is an evidentiary predicate for the instruction and [(2)] a party requests it."[4] In the instant case, Appellee failed to satisfy this test because he failed to request the instruction,[5] and the military judge had no sua sponte duty to give the instruction without a request. Sua sponte means "[w]ithout prompting or suggestion." *Black's Law Dictionary* (11th ed. 2019).

However, as evidenced by the CCA's decision in this case, *Boyd*'s later discussion of failure to request an instruction on the impact of a punitive discharge on *temporary disability retirement* has produced some confusion. In *Boyd*, this Court announced the clear two-part test for a military judge's requirement to give a retirement instruction as a prospective rule. 55 M.J. at 221. But with respect to analyzing Boyd's failure to request an instruction on the impact of a punitive discharge on temporary disability retirement in his case, we stated we would "grant relief only if the military judge's failure to instruct *sua sponte* was plain error," and then concluded that there was no factual predicate for the instruction, and thus no error. *Id.* at 222.

At odds with the clear statement of the prospective rule, this appears to have been an unartfully crafted attempt to give Boyd himself the benefit of the rule with respect to a form

---

M.J. 194, 197 (C.A.A.F. 2017). We see no reason to interpret the provision for sentencing instructions any differently. We review forfeited issues for plain error. *Davis*, 76 M.J. at 227 n.1.

[4] This test applies to all forms of retirement benefits, including retirement for disability.

[5] Because Appellee failed to request the instruction, we need not decide whether the facts here constitute a sufficient evidentiary predicate for the instruction.

of retirement benefits for which he did not request an instruction. That attempt, however, does not change the clear statement of the prospective rule, nor does it create a duty for a military judge to sua sponte instruct on the effect of a punitive discharge on retirement benefits. Rather, where the two-part test is met, the military judge must

> be liberal in granting requests for such an instruction. [The military judge] may deny a request . . . only in cases where there is no evidentiary predicate for it or the possibility of retirement is so remote as to make it irrelevant to determining an appropriate sentence.
>
> The instruction should be appropriately tailored to the facts of the case with the assistance of counsel . . . .

*Id.* at 221.

While both the evidentiary predicates and benefits for retirement for length of service and disability retirement—temporary or permanent—may be different, there is no question that a punitive discharge affects each form of retirement in turn. We thus clarify that both an actual predicate and a request by a party are required for an instruction on the effects of a punitive discharge with respect to all forms of retirement.[6]

Requiring a request appropriately puts counsel for both sides in control of deciding whether such an instruction comports with their overall strategy and prevents the military judge from unduly interfering with that strategy. *Cf. Griffin*, 25 M.J. at 424 (finding no error where military judge, at trial counsel's request and in response to a members' question, instructed members about the effect of a punitive discharge on retirement benefits in the absence of a defense objection);

---

[6] We do not address situations where instructions might be needed to respond to a question from the members, *see, e.g.*, *Greaves*, 46 M.J. at 134 (military judge erred in failing to correctly answer members' questions about the effect of a bad-conduct discharge on retirement benefits), or to correct a misstatement of the law by counsel. *Cf. United States v. Alameda*, 57 M.J. 190, 199 (C.A.A.F. 2002) (holding the military judge erred in failing to provide curative instructions after misstatements by counsel).

*United States v. Mead*, 72 M.J. 479, 482 (C.A.A.F. 2013) (recognizing the accused retains the discretion whether to reveal a nonjudicial punishment record involving the same conduct at sentencing).[7] This is consistent with the language in *Boyd*, which notes that where an instruction is given, it "should be appropriately tailored to the facts of the case *with the assistance of counsel.*" *Boyd*, 55 M.J. at 221 (emphasis added).

### III. DECISION

The *Boyd* test, which requires a request, cannot be squared with a sua sponte duty for a military judge to give the instruction. Accordingly, we answer the certified question in the affirmative.

The judgment of the United States Air Force Court of Criminal Appeals is affirmed as to findings and set aside as to the sentence. The case is returned to the Judge Advocate General of the Air Force for remand to the Court of Criminal Appeals for further review in accordance with this decision.

---

[7] Indeed, there may be strategic reasons why defense counsel might not want to highlight the effects of a punitive discharge with an instruction, such as the fact that a punitive discharge cuts off an accused's retirement eligibility. *Cf. United States v. Stargell*, 49 M.J. 92, 93 (C.A.A.F. 1998) (affirming the government's argument at sentencing that the appellant would honorably retire if not sentenced to a punitive discharge under the facts of that case).